# United States Court of Appeals for the Federal Circuit

04-1447
(Serial No. 75/934,927)

IN RE STEELBUILDING.COM

Michael M. Zadrozny, Shlesinger, Arkwright & Garvey, LLP, of Arlington, Virginia, argued for appellant.

Nancy C. Slutter, Associate Solicitor, Office of the Solicitor, United States Patent and Trademark Office, of Arlington, Virginia, argued for the Director of the Patent and Trademark Office. With her on the brief were John M. Whealan, Solicitor, and Cynthia C. Lynch, Associate Solicitor.

Appealed from: United States Patent and Trademark Office, Trademark Trial and
                        Appeal Board

# United States Court of Appeals for the Federal Circuit

04-1447
(Serial No. 75/934,927)

IN RE STEELBUILDING.COM

_____

DECIDED: July 11, 2005

_____

Before MICHEL, <u>Chief Judge</u>, RADER, and LINN, <u>Circuit Judges</u>.

Opinion for the court filed by <u>Circuit Judge</u> RADER. Opinion concurring-in-part and dissenting-in-part filed by <u>Circuit Judge</u> LINN.

RADER, <u>Circuit Judge</u>

The Trademark Trial and Appeal Board (Board) affirmed the refusal of the United States Patent and Trademark Office (PTO) to register the mark STEELBUILDING.COM to appellant Steelbuilding.com. The Board held the mark was either generic or merely descriptive and without secondary meaning. <u>In re Steelbuilding.com</u>, 2003 WL 23350100 (TTAB Mar. 24, 2003). This court vacates the Board's determination that the mark is generic, but affirms its findings on descriptiveness and the absence of secondary meaning, and therefore affirms the denial of the application.

I.

Appellant filed an intent-to-use application under 15 U.S.C. § 1051(b)(1) to register the mark STEELBUILDING.COM as a service mark on March 3, 2000. In its original application, appellant stated that it intended to use the mark in connection with the "[s]ale of pre-engineered metal buildings and roofing systems." The examining

attorney initially denied registration on the ground that the proposed mark was merely descriptive, under 15 U.S.C. § 1052(e)(1). Appellant then amended its application and requested reconsideration. In the amendment, the applicant changed the identification of its services to "computerized on-line retail services in the field of pre-engineered metal buildings and roofing systems." Appellant also filed an allegation of use under 15 U.S.C. § 1051(c), submitted samples of advertising that described the interactive design/purchase capabilities of its service, and submitted evidence of acquired distinctiveness. The examiner again refused registration, this time finding that the mark was generic for the specified goods and services without any acquired distinctiveness under 15 U.S.C. § 1052(f).

The Board affirmed the PTO's rejection on the ground that STEELBUILDING.COM is generic for "a website that provides computerized on-line retail services in the field of pre-engineered metal buildings including steel buildings." Steelbuilding.com, 2003 WL 23350100, at *8. The Board also found that "if the terms 'steel building' [sic] and '.com' are not generic, they are at least highly descriptive." Id. at *11. The Board noted that the addition of the term ".com," a top level domain (TLD) indicator, was without source-identifying significance, citing In re Martin Container, Inc., 65 USPQ2d 1058 (TTAB 2002) and In re CyberFinancial.Net, Inc., 65 USPQ2d 1789 (TTAB 2002). Steelbuilding.com, 2003 WL 23350100, at *5. Finally, the Board found appellant's evidence inadequate to show acquired distinctiveness.

II.

To deny the registration of a mark as generic, the PTO has the burden of "substantial[ly] showing . . . that the matter is in fact generic . . . based on clear

evidence of generic use." In re Am. Fertility Soc'y., 188 F.3d 1341, 1346 (Fed. Cir. 1999). This court reviews a holding of genericness or descriptiveness for substantial evidence. In re Oppedahl & Larson LLP, 373 F.3d 1171, 1173 (Fed. Cir. 2004). A generic term, by definition, identifies a type of product, not the source of the product. In re Gould Paper Corp., 834 F.2d 1017, 1018 (Fed. Cir. 1987). A generic term cannot function as an indicator of the source of a product, and thus as a trademark, because the relevant public understands the term primarily as the common name for the product. In re Dial-A-Mattress, 240 F.3d 1341, 1344 (Fed. Cir. 2001). This court's test for genericness has two parts: first, the court determines the genus of goods or services at issue, and second, the court determines whether the term sought to be registered is understood by the relevant public "primarily to refer to that genus of goods or services." H. Marvin Ginn Corp. v. Int'l Ass'n of Fire Chiefs, 782 F.2d 987, 990 (Fed. Cir. 1986). An inquiry into the public's understanding of a mark requires consideration of the mark as a whole. Even if each of the constituent words in a combination mark is generic, the combination is not generic unless the entire formulation does not add any meaning to the otherwise generic mark. Am. Fertility Soc'y, 188 F.3d at 1347; Dial-A-Mattress, 240 F.3d at 1345.

A merely descriptive mark describes "the qualities, ingredients or characteristics of" the goods or services related to the mark. Estate of P.D. Beckwith, Inc. v. Comm'r of Patents, 252 U.S. 538, 543 (1920). A mark is "merely descriptive" if it "immediately conveys . . . knowledge of the ingredients, qualities, or characteristics of the goods . . . with which it is used." In re Gyulay, 820 F.2d 1216, 1217 (Fed. Cir. 1987). However, if a mark is not merely descriptive, because some imagination, thought, and perception

are required to arrive at the qualities or characteristics of the goods, it may still qualify for registration. See In re Nett Designs, Inc., 236 F.3d 1339, 1341 (Fed. Cir. 2001). Descriptive marks can qualify for registration on the Principal Register if they acquire secondary meaning, i.e., distinctiveness. See 15 U.S.C. § 1052(f) ; Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769 (1992). To show that a mark has acquired distinctiveness, an applicant must demonstrate that the relevant public understands the primary significance of the mark as identifying the source of a product or service rather than the product or service itself. Qualitex Co. v. Jacobson Prods. Inc., 514 U.S. 159, 163 (1995).

Only in rare instances will the addition of a TLD indicator to a descriptive term operate to create a distinctive mark. Oppedahl, 373 F.3d at 1175. In those rare instances, a term that is not distinctive by itself may acquire some additional meaning from the addition of a TLD, such as ".com," ".net," etc. See id. at 1175-76. In those unusual circumstances, the addition of the TLD can show Internet-related distinctiveness, intimating some "Internet feature" of the item. See id. at 1178. Because the evaluation of a mark proposed for registration requires consideration of the mark as a whole, the distinctiveness derived from a connection to the Internet, as indicated by the TLD indicator, is a part of the calculus for registration.

III.

The Board defined the genus for appellant's goods or services as "the sale of pre-engineered 'steel buildings' on the Internet." Steelbuilding.com, 2003 WL 23350100, at *7, and "computerized on-line retail services in the field of pre-engineered metal buildings including steel buildings." Id. at *8. The Board, with this definition of

genus in mind, first considered "STEELBUILDING" in isolation, and then considered the effect of adding ".COM." The Board found that "applicant's competitors use the term 'steel buildings' generically," giving several examples of the use of "steel buildings" by competitors.  The record shows, however, that the evidence cited by the Board relates to the phrase "steel building" or "steel buildings"; none refers to "steelbuilding" or "STEELBUILDING."  Despite this distinction, the Board found STEELBUILDING.COM to be "simply the name of a website that sells, inter alia, steel buildings."  Id.

As an initial matter, this court examines the Board's understanding of the genus of goods or services at issue.  The applicant defined its goods and services, in its amended application, as "computerized on-line retail services in the field of pre-engineered metal buildings and roofing systems."  Although the definitions of the applicant and of the Board appear nearly identical, the parties understand the phrase "computerized on-line retail services" differently.  Applicant sells steel buildings on line, but the record indicates it provides services beyond mere sales.  In other words, the services at issue are far more than an on-line catalogue.  The applicant's web site permits a customer to first design, then determine an appropriate price for, its own unique design.  Finally, the customer may purchase its unique building on line.  The web site features a process that facilitates the customer's design of his building at his own computer via a complex interactive process.

The STEELBUILDING.COM web site thus includes more than a mere shopping guide for metal building structures.  As the program-user develops the design, the program re-calculates design elements as necessary to meet codes and other engineering requirements.  The program then calculates a price for the designed

building. The purchaser can compare prices of different designs, and finally purchase a preferred design. Therefore, while correctly concluding that "[a] significant, if not primary feature, of applicant's services is the sale of steel buildings," id. at *4, the Board fails to acknowledge the interactive design feature of the applicant's goods and services.

Although the Board's misunderstanding of the proper genus for "STEELBUILDING.COM" alone requires this court to vacate its decision on genericness, this court also examines generally the Board's finding on this matter. In deciding whether the relevant public uses the term STEELBUILDING.COM as the genus or name of the genus of the specified goods or services, the Board considered "STEELBUILDING" and ".COM" separately. The Board decided that STEELBUILDING by itself is a generic term. Id. at *5. The Board apparently concluded that STEELBUILDING is generic for "steel buildings." The Board does not seem to acknowledge an alternative genus, namely the "the building of steel structures." In this case, the genus might be both formulations. The Board does not adequately define the genus.

In any event, the record does not show substantial evidence that "STEELBUILDING," in common usage, is a compound word used to mean either "steel building" or "steel buildings." See Gould, 834 F.2d at 1018 ("the PTO has satisfied its evidentiary burden if . . . it produces evidence including dictionary definitions that the separate words joined to form a compound have a meaning identical to the meaning common usage would ascribe to those words as a compound"). In Gould, the applicant attempted to register "SCREENWIPE," but this court held that the applicant's own

description of the product as "a . . . wipe . . . for . . . screens" provided adequate evidence that merely combining the words "screen" and "wipe" did not render the mark registerable, and held that "the terms remain as generic in the compound as individually, and the compound thus created is itself generic." Id. at 1019. In Gould, the applicant admitted that "screenwipe" denoted a "screen wipe." In contrast, the applicant here denies that "STEELBUILDING" describes merely "steel buildings." The record does not contain any examination of dictionary definitions or other sources that might have indicated that joining the separate words "steel" and "building" would create a word that, in context, would be generic. The Board merely cited evidence that showed that when customers or competitors talked about a steel building, they used the phrase "steel building." That evidence shows that "steel building" is generic, but does not address directly the composite term STEELBUILDING.

The Board considered the effect of attaching the term ".COM" to "STEELBUILDING." The Board construed ".COM" as no more than a designation of a commercial entity on the Internet, like "company." Therefore, the combination of "STEELBUILDING" and ".COM" was, to the Board, no more registerable than "STEELBUILDING" alone. Steelbuilding.com, 2003 WL 23350100, at *6 (citing Goodyear's India Rubber Glove Mfg. Co. v. Goodyear Rubber Co., 128 U.S. 598, 602-03 (1888) ("nor will the incorporation of a company in the name of an article of commerce, without other specification, create any exclusive right to the use of the name")). However, Goodyear's did not create a per se rule for TLD indicators. In fact, in rare circumstances, as noted before, "a TLD may render an otherwise descriptive term sufficiently distinctive for trademark registration." Oppedahl, 373 F.3d at 1177. In

this unusual case, the addition of the TLD indicator expanded the meaning of the mark to include goods and services beyond the mere sale of steel buildings. Specifically, the TLD expanded the mark to include internet services that include "building" or designing steel structures on the web site and then calculating an appropriate price before ordering the unique structure. The record therefore does not contain evidence sufficient to support the board's finding that "STEELBUILDING.COM" is generic for applicant's services.

In sum, the Board erroneously: (1) construed the genus of applicant's services and goods too narrowly; (2) discounted the ambiguities and multiple meanings in the mark; and (3) dismissed the addition of the TLD indicator despite its expansion of the meaning of "STEELBUILDING.COM."

### IV.

The Board also considered whether the mark STEELBUILDING.COM was, if not generic, then at least merely descriptive. The applicant's web site lists as its first feature: "Design your steel building with our advanced interactive system." (Emphasis added). One of applicant's advertisements includes the following sentence: "E-Commerce website offers instant pricing and on-line sales of steel buildings, mini storage systems, building accessories, component parts and all-steel homes." (Emphases added). Based on this evidence and more in the record, this court concurs in the statement of the Board: "[w]e, frankly, are at a loss to understand that if the retail sale of steel buildings is not the primary feature of applicant's services, what is. However, whether steel buildings are the 'primary feature' of applicant's services is not determinative, because they are at least a significant feature of applicant's services."

Steelbuilding.com, 2003 WL 23350100, at *9. For descriptiveness, the record shows that a consumer would recognize the compound word "STEELBUILDING" as conveying the same impression, at least for trademark purposes, as the phrase "steel buildings."

The Board also considered how the addition of the TLD indicator may have affected descriptiveness. The Board correctly observed that adding ".COM" to "STEELBUILDING" "simply means that services associated with the generic term are performed in an on-line or 'e-commerce' environment." Id. at *10. Indeed, the TLD indicator describes a significant feature of applicant's services, namely, the Internet commerce connection. Thus, the record sustains the Board's determination that applicant's mark is "merely descriptive" for the on-line services specified in the application.

V.

Finally, the Board considered whether the mark had acquired distinctiveness, or secondary meaning. In determining whether secondary meaning has been acquired, the Board may examine copying, advertising expenditures, sales success, length and exclusivity of use, unsolicited media coverage, and consumer studies (linking the name to a source). Cicena Ltd. v. Columbia Telecomms Group, 900 F.2d 1546, 1551 (Fed. Cir. 1990). On this list, no single factor is determinative. A showing of secondary meaning need not consider each of these elements. Rather, the determination examines all of the circumstances involving the use of the mark. See Thompson Med. Co., Inc. v. Pfizer Inc., 753 F.2d 208, 217 (Fed. Cir. 1985). Finally, the applicant's burden of showing acquired distinctiveness increases with the level of descriptiveness; a more descriptive term requires more evidence of secondary meaning. In re Bongrain

Intern. (Am.) Corp., 894 F.2d 1316, 1317 (Fed. Cir. 1990) ("the greater the degree of descriptiveness the term has, the heavier the burden to prove it has attained secondary meaning").

The Board considered evidence of print and Internet advertising, declarations from competitors and the applicant's own officers, sales data, web site traffic data, and customer communications. The Board assessed the evidence on advertising by comparing applicant's advertising expenditures with those of the unsuccessful applicant in In re Leatherman Tool Group Inc., 32 USPQ2d 1443, 1443 (TTAB 1994), finding them to be "at a much smaller level." Steelbuilding.com, 2003 WL 23350100, at *11. The Board noted that applicant's advertising expenses "rely heavily on Internet banner advertisements." Id.

The Board considered applicant's Internet poll on name recognition. The poll, at a web site named MetalBuilding.com, first asked visitors a few questions about current events or sports, e.g., "Who will win Election 2000? Who will win the NBA title?," then asked "which one of the following building manufacturers is the most recognizable?" In the poll, the applicant was more recognizable than the others on the list: "Package Industries," "Parkline," Steelox," and "US Structures." This court agrees with the Board that this particular poll lacked sufficient signs of reliability. For instance, the poll results do not indicate the number of actual participants. The poll did not attempt to prevent visitors from voting more than once. The poll did not prevent interested parties, such as friends or associates or even employees of the applicant, from voting multiple times to skew the results. In sum, this poll does not even remotely follow the precepts of standard trademark name-recognition polls. Although the Board was correct to consider

04-1447                                    10

the survey for its very limited value, the survey did not show sufficient reliability to constitute sufficient evidence of acquired distinctiveness. Id. at *12 ("occasionally, people may recognize applicant's term as a trademark but much of this evidence may be attributable to domain name recognition").

The Board considered other evidence as well, but none of that evidence established the proposed mark's distinctiveness. The proposed mark is highly descriptive. Therefore, applicant had the burden to show a concomitantly high level of secondary meaning. The Board correctly determined that, on this record, "applicant's evidence falls far short of its burden." Id.

VI.

In this case, the Board did not correctly describe the genus of goods and services offered by the applicant. Even using the Board's understanding of the genus, however, this record does not support a finding that "STEELBUILDING.COM" was generic. On the other hand, the record suffices to show that the proposed mark was merely descriptive. This court also agrees that the applicant did not meet its high burden of showing acquisition of secondary meaning. For these reasons, this court affirms the decision of the Board, but only on grounds of descriptiveness and absence of distinctiveness.

COSTS

Each party shall bear its own costs.

VACATED-IN-PART and AFFIRMED-IN-PART

# United States Court of Appeals for the Federal Circuit

04-1447
(Serial No. 75/934,927)

IN RE STEELBUILDING.COM

LINN, <u>Circuit Judge</u>, concurring-in-part and dissenting-in-part.

I agree with the majority's well-reasoned analysis in all respects but one. I dissent only from the majority's decision to sustain the Board's finding of no acquired distinctiveness. Because the Board legally erred in according too little weight to some of the evidence submitted to show the acquisition of secondary meaning, and because the Board acted arbitrarily in not considering other evidence, I would vacate the Board's determination of no acquired distinctiveness and remand for further consideration.

I agree with the majority that the poll results are inconclusive and do not prove acquired distinctiveness. However, applicant submitted declarations from competitors and others with industry knowledge, as well as customer letters, that demonstrate that individuals view STEELBUILDING.COM as source identifying. The Board found that these letters "provide some de facto evidence" of a recognized mark but accorded them little weight because "much of this evidence may be attributable to domain name recognition." <u>In re Steelbuilding.com</u>, 2003 WL 23350100, at *11 (TTAB Mar. 24, 2003). The Board's finding that the mark is also a domain name provides it no legal basis to discount this evidence of acquired distinctiveness. The question before the Board is whether consumers consider STEELBUILDING.COM to identify the source of Applicant's interactive, on-line, steel-building services. <u>In re Oppedahl & Larson LLP</u>,

373 F.3d 1171, 1176 (Fed. Cir. 2004) (explaining that domain-name marks may obtain registration upon a showing of secondary meaning); 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 7:17.1 (4th ed. 2005) (noting that a domain name can become a service mark if it is used to identify and distinguish the source of services).

In the Internet world, domain-name recognition is a form of source identification and may even evidence the acquired distinctiveness of the domain-name mark. See Paccar Inc. v. Telescan Techs., L.L.C., 319 F.3d 243, 250 (6th Cir. 2003) ("[W]ords in many domain names can and do communicate information as to the source or sponsor of the web site."); Brookfield Communications, Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1055 (9th Cir. 1999) ("The domain name is more than a mere address: like trademarks, second-level domain names communicate information as to source."); Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1327 (9th Cir. 1998) ("We reject Toeppen's premise that a domain name is nothing more than an address. A significant purpose of a domain name is to identify the entity that owns the web site."); Xuan-Thao N. Nguyen, Taxing the New Intellectual Property Right, 56 Hastings L.J. 1, 49-50 (2004) ("Courts have consistently held that domain names are not merely addresses, but powerful source indicators on the Internet."). The Board legally erred in discounting this evidence on the basis that the mark is also a domain name. Its decision must be vacated. See Recot, Inc. v. M.C. Becton, 214 F.3d 1322, 1327-28 (Fed. Cir. 2000) (holding that the Board legally erred in not according sufficient weight to evidence of a mark's fame in a likelihood of confusion analysis, vacating, and remanding for further consideration); see also Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196

04-1447                                    2

(1947) (holding that a reviewing court may not supply a reasoned basis for the agency's action that the agency itself has not given); In re Thrift, 298 F.3d 1357, 1366 (Fed. Cir. 2002) (applying the Chenery rule to decisions of the Board of Patent Appeals and Interferences); In re Sang-Su Lee, 277 F.3d 1338, 1342 (Fed. Cir. 2002) ("Tribunals of the PTO are governed by the Administrative Procedure Act, and their rulings receive the same judicial deference as do tribunals of other administrative agencies.").

The Board also erred in giving Applicant's advertising through banner ads and other Internet channels too little weight, Recot, 214 F.3d at 1327-28, and acted arbitrarily in ignoring Applicant's evidence of consumer recognition based on the number of consumers who return to the site regularly and login, see Sang-Su Lee, 277 F.3d at 1343-45 (finding arbitrary the Board's finding of obviousness because of inadequate explanation on motivation to combine, vacating, and remanding); Gechter v. Davidson, 116 F.3d 1454, 1457-60 (Fed. Cir. 1997) (finding arbitrary the Board's finding of anticipation because of inadequate explanation on how the reference disclosed claim elements, vacating, and remanding). Applicant spent at least $99,000 on Internet advertising in 2001, and about $98,000 on print ads. Applicant purchased keyword Internet banner ads—ads that appear as links on a search engine after a user has searched a keyword—and "pay-per-performance" ads, which allow a company to garner a top ranking on a user's returned-search-result list.

Success of Internet ads is often measured by the "click-through rate." Applicant's banner ads appeared 75,000 times per month and enjoyed a click-through rate as high as 8% on search terms like "metal building." A click-through rate of only 4% would yield roughly 3,000 visits to the steelbuilding.com website per month. "Pay-per-performance"

advertising would lead to several thousand more visits per month. Applicant presented evidence that each day 200 new users and 200 repeat users logged on to the steelbuilding.com website to request price quotes. Indeed, Internet advertising cost-effectively generated site traffic, which caused an association between Applicant's services and its domain-name mark. See, e.g., Michael Korybut, Online Auctions of Repossessed Collateral Under Article 9, 31 Rutgers L.J. 29, 54 (1999) ("By targeting the specific market segment and continuous delivery over the Internet, online advertising can efficiently reach the appropriate audience, in sharp contrast to traditional mass marketing where the target audience is constantly exposed to advertisements in which they have no interest."). The Board's reliance on In re Leatherman Tool Group Inc., 32 U.S.P.Q.2d 1443 (TTAB 1994), in summarily dismissing Applicant's Internet advertising evidence is misplaced. Leatherman was decided long before Internet advertising became a cost-effective alternative to traditional advertising media, and its relevance to the facts of the present case is questionable.

The Board also failed to address evidence that Applicant's sales rose quickly as a result of its advertising. In 2001, cumulative sales rose from $500,000, for the first four months of the mark's use, to $4,500,000 over the next seven months. The company was featured prominently in the trade press for its innovative services. Because the Board did not discuss this evidence, we are left with no basis to determine whether the Board considered this evidence in determining the extent to which Applicant might have leveraged the Internet and its mark's domain-name status to acquire secondary meaning, even with only modest advertising expenditures.

04-1447                                    4

For the reasons articulated, I believe the Board committed legal error in weighing the evidence and acted arbitrarily in not considering evidence. These errors had a "bearing on . . . the substance of the decision reached" by the Board. <u>See</u> <u>In re Watts</u>, 354 F.3d 1362, 1370 (Fed. Cir. 2004) (internal quotations omitted). Therefore, I would vacate the Board's determination of no acquired distinctiveness and remand for reconsideration consistent with this opinion.