NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

## IN RE HEALTH SCIENCE FUNDING, LLC

---

2013-1054

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in Nos. 85/255,510 and 85/255,541.

---

Decided: September 13, 2013

---

J. MARK POHL, Pharmaceutical Patent Att'ys, LLC, of Morristown, New Jersey, for appellant.

BENJAMIN T. HICKMAN, Associate Solicitor, United States Patent and Trademark Office, of Alexandria, Virginia, for appellee. With him on the brief were NATHAN K. KELLEY, Deputy Solicitor, and CHRISTINA J. HIEBER, Associate Solicitor.

---

Before PROST, CLEVENGER, and LINN, *Circuit Judges.*

PROST, *Circuit Judge.*

Health Science Funding, LLC ("Health Science") appeals from the final decision of the United States Patent

and Trademark Office Trademark Trial and Appeal Board ("Board") refusing registration of the marks "PRASTERONE.ORG" and "THE PRASTERONE COMPANY." *In re Health Sci. Funding, LLC*, No. 85255510, 2012 WL 4763146 (T.T.A.B. Sept. 19, 2012). Because the Board's decision finding the marks generic for the recited services is supported by substantial evidence, we affirm.

BACKGROUND

Health Science filed applications seeking registration of the marks "PRASTERONE.ORG" and "THE PRASTERONE COMPANY" on the Supplemental Register for services identified as "providing a website featuring scientific and clinical research information about investigational medical foods, dietary supplements or drugs, namely, prasterone or derivatives or analogs thereof." The examining attorney refused registration, finding that the proposed marks are generic under Section 23 of the Trademark Act, 15 U.S.C. § 1091.

Health Science appealed to the Board, which affirmed the denial of registration. The Board began its analysis "by finding that the genus of services at issue in this case is adequately defined by applicant's identification of services, namely, 'providing a website featuring scientific and clinical research information about investigational medical foods, dietary supplements or drugs, namely, prasterone or derivatives or analogs thereof.'" *Health Sci. Funding,* 2012 WL 4763146, at *3. The Board then found that, given the genus of services offered, the terms PRASTERONE.ORG and THE PRASTERONE COMPANY would be understood by the relevant public primarily to refer to that genus, namely information services regarding prasterone.

The Board analyzed each mark in its entirety by first considering the separate elements of the marks and then finding that the combinations produced no non-generic

meaning. The Board found, and Health Science concedes, that prasterone is a generic term for synthetic dehydroepiandroesterone (DHEA). The Board reasoned that because prasterone is generic for the subject matter of applicant's services, it is likewise generic for the services themselves. The Board then found that the terms ".org" and "company" are themselves generic and without source-identifying significance in the context of those services. Finally, looking to the marks in their entirety, the Board found that the addition of the generic top-level domain ".org" does nothing to convert the otherwise generic term "prasterone" into something more that would allow registration of the PRASTERONE.ORG mark. So too with THE PRASTERONE COMPANY mark, finding that the addition of the article "the" and the generic word "company" to prasterone did not produce a registrable mark. Having found the marks generic, the Board affirmed the refusal to register the marks.

## DISCUSSION

Whether a particular term is generic is a question of fact. *In re Reed Elsevier Props. Inc.*, 482 F.3d 1376, 1378 (Fed. Cir. 2007). The Patent and Trademark Office ("PTO") bears the burden of establishing that a proposed mark is generic by clear evidence. *In re Hotels.com, L.P.*, 573 F.3d 1300, 1302 (Fed. Cir. 2009). We review the Board's genericness finding for substantial evidence, taking into account the PTO's heightened burden of proof. *Id.*

Health Science challenges the Board's decision on two grounds. First, Health Science vaguely avers that the Board misidentified the genus of services at issue and that there is no evidence that either mark is generic for the correct genus of services. Second, Health Science construes the Board's opinion as holding that genericness in one class of goods or services is sufficient to establish genericness for another class, which according to Health

Science is contrary to our precedent. Neither of these arguments has merit.

"The critical issue in genericness cases is whether members of the relevant public primarily use or understand the term sought to be protected to refer to the genus of goods or services in question." *H. Marvin Ginn Corp. v. Int'l Ass'n of Fire Chiefs, Inc.*, 782 F.2d 987, 989-90 (Fed. Cir. 1986). Determining a mark's genericness is "a two-step inquiry: First, what is the genus of goods or services at issue? Second, is the term sought to be registered or retained on the register understood by the relevant public primarily to refer to that genus of goods or services?" *Id.* at 990.

With respect to the first step, Health Science contends that there is no evidence in the record to support a finding that the marks are generic for publication services. This assertion is as true as it is immaterial. The Board did not determine that the services at issue are publication services, but rather found that the services are "providing a website featuring scientific and clinical research information about investigational medical foods, dietary supplements or drugs, namely, prasterone or derivatives or analogs thereof." *Health Sci. Funding*, 2012 WL 4763146, at *3. Health Science does not directly challenge this finding. Even so, such a challenge would fail as the Board merely adopted Health Science's own identification of its services. Moreover, as the Board noted, there is no serious contention that Health Science's services are "'publishing services' that involve 'preparation of the works for online publication, not providing the work itself.'" *Id. at* *3 n.8. Accordingly, we find no error in the Board's identification of the services at issue.

Health Science also finds fault with the Board's analysis concerning whether the marks are understood by the relevant public primarily to refer to the identified genus of services. According to Health Science, the Board held

that genericness in one class of goods or services is sufficient to establish genericness for another class as a matter of law. It is true that the Board stated that "because 'prasterone' is the generic name of one of the items that is the subject matter of applicant's services, it is likewise generic for the services themselves." *Id.* Had the Board ended its analysis there, Health Science might have a point. However, the Board did not stop there.

To the contrary, the Board looked first to the term "prasterone" in isolation and found that, as the parties agree, it is generic for synthetic DHEA. The Board also found that the generic top-level domain ".org" and the word "company" are themselves both generic terms. The Board then looked to the evidence concerning both the generic meaning of prasterone and its use on informational websites. The Board found that "prasterone" is frequently used with websites that provide general information about prasterone and its efficacy in medical use. Finally, the Board, viewing the marks in their entirety, found that the addition of ".org" and "company" did nothing to convert the generic term prasterone into something more, something registrable.

Health Science relies heavily on our holding in *In re Steelbuilding.com*, 415 F.3d 1293 (Fed. Cir. 2005), arguing that the board erred in relying on genericness in one class of goods or services (i.e. drugs) to establish genericness for another class (i.e. information services). As noted above, the Board analysis was considerably more detailed than Health Science alleges. Moreover, *Steelbuilding.com* is easily distinguishable. In that case, we reversed because "the Board erroneously: (1) construed the genus of applicant's services and goods too narrowly; (2) discounted the ambiguities and multiple meanings in the mark; and (3) dismissed the addition of the TLD indicator despite its expansion of the meaning of 'STEELBUILDING.COM.'" *Id.* at 1299. Health Science points to no similar errors in the Board's decision in this case.

In fact, the Board's analysis in the present case largely tracks the analysis we approved in *In re Hotels.com, L.P.*, 573 F.3d 1300 (Fed. Cir. 2009).  In *Hotels.com*, the Board found that HOTELS.COM is a generic term for hotel information and reservations, and that the "dot-com" shows internet commerce and does not convert the generic term "hotels" into a brand name.  As they have in this case, the Board addressed the genericness of each of the constituent words and then used the prevalence of "hotel.com" or "hotels.com" in hotel reservation service websites to find the combination generic.  We affirmed, finding the Board's decision was supported by substantial evidence, including "the large number of similar uses of 'hotels' with a dot-com suffix, as well as the common meaning and dictionary definition of 'hotels' and the standard usage of '.com' to show a commercial internet domain."  *Id.* at 1306; *see also In re 1800Mattress.com IP, LLC*, 586 F.3d 1359 (Fed. Cir. 2009) (finding "MATTRESS.COM" generic in relation to online retail store services in the field of mattresses was supported by substantial evidence).

In the present case, as noted above, the Board found that the generic meaning of prasterone was not altered by the use of the generic terms ".org" or "company."  Further, the Board relied on evidence showing that "prasterone" is frequently used with websites that provide general information about prasterone and its efficacy in medical use; the very use for which Health Science seeks registration.  Health Science fails to show why any of these factual findings lack substantial evidentiary support.  Indeed, these findings as well as the Board's ultimate conclusion that the marks are generic are supported by substantial evidence.  Accordingly, we affirm.

**AFFIRMED**