NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IN RE:  JC HOSPITALITY LLC,**
*Appellant*

---

2018-2048, 2018-2049

---

Appeals from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in Nos. 86/525,425, 86/525,431.

---

Decided:  February 28, 2020

---

JILL MARIA PIETRINI, Sheppard Mullin Richter & Hampton LLP, Los Angeles, CA, argued for appellant.  Also represented by PAUL BOST, SUSAN M. HWANG.

THOMAS L. CASAGRANDE, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for appellee Andrei Iancu.  Also represented by THOMAS W. KRAUSE, CHRISTINA J. HIEBER.

---

Before PROST, *Chief Judge*, O'MALLEY and REYNA, *Circuit Judges.*

PROST, *Chief Judge.*

JC Hospitality appeals from an order of the Trademark Trial and Appeal Board ("Board") affirming the U.S. Patent and Trademark Office's refusal to register two trademark applications. Both applications sought to register the same proposed mark "THE JOINT," but for two different classes of services. The Board affirmed both refusals on the ground that the mark is generic for the applied-for services, or, in the alternative, because the mark is merely descriptive of the services and that JC Hospitality had not proven that the mark had acquired distinctiveness as a source identifier for the services. We affirm the Board's order with respect to both applications because we conclude that substantial evidence supports the Board's conclusions that THE JOINT is merely descriptive of JC Hospitality's services and that JC Hospitality has not demonstrated acquired distinctiveness.

I

This appeal involves two trademark applications to register the same proposed mark, THE JOINT (in standard characters). Application Serial No. 86/525,425 ("the '425 application") covers "[e]ntertainment services, namely live musical performances, shows, and concerts; and nightclub services" in International Class 41. Application Serial No. 86/525,431 ("the '431 application") covers "[r]estaurant, bar and catering services" in International Class 43.[1]

Prosecution of these applications proceeded in parallel. The examining attorney refused registration in both

---

[1]     The '425 and '431 applications were filed by JC Hospitality's predecessor in interest, HRHH IP, LLC. On March 30, 2018, HRHH assigned the applications to JC Hospitality, and that assignment was recorded with the Office on May 25, 2018 at Reel 6336/Frame 0854. We refer to JC Hospitality and its predecessor in interest collectively as JC Hospitality.

applications based on two alternative grounds under Section 2(e)(1) of the Trademark Act. 15 U.S.C. § 1052. Specifically, the examining attorney determined that THE JOINT is generic for both classes of applied-for services, or in the alternative, merely descriptive of the services.

JC Hospitality responded by arguing that the mark is neither generic nor merely descriptive. In the alternative, JC Hospitality amended its application to claim the benefit of Section 2(f), which permits an applicant to register a merely descriptive mark if the applicant can demonstrate acquired distinctiveness. 15 U.S.C. § 1052(f). The examining attorney considered, but rejected, the evidence of acquired distinctiveness and again refused registration of the mark on the bases that the mark was generic for the services, or in the alternative, was merely descriptive but had not acquired distinctiveness for the services.

After the examining attorney's refusals became final, and following reconsideration by the examining attorney, the Board considered JC Hospitality's appeal from prosecution on both grounds. The Board consolidated the proceedings on appeal and decided them in one opinion. With respect to both, the Board affirmed the examining attorney's finding that THE JOINT is generic, or in the alternative, merely descriptive of JC Hospitality's services, and that JC Hospitality had not acquired distinctiveness as a source identifier for the mark. *In re HRHH IP, LLC*, Nos. 86525425 and 865252431, 2018 WL 1871443 (T.T.A.B. Apr. 4, 2018) ("*Board Decision*").

JC Hospitality timely appealed. We have jurisdiction under 15 U.S.C. § 1071(a) and 28 U.S.C. § 1295(a)(4)(B).

## II

A proposed trademark is evaluated for eligibility based on the mark's placement on a distinctiveness spectrum, which includes in ascending order: generic (or "common" descriptive), merely descriptive, suggestive, and arbitrary

(or fanciful) marks. *In re N.C. Lottery*, 866 F.3d 1363, 1366 (Fed. Cir. 2017) (citing *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 10–11 (2d Cir. 1976)); *In re Chippendales USA, Inc.*, 622 F.3d 1346, 1350–51 (Fed. Cir. 2010).

Relevant to this appeal, under Section 2(e)(1) of the Trademark Act, a mark is merely descriptive if it describes "the qualities or characteristics of a good or service." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194 (1985) (citing 15 U.S.C. § 1052(e)(1)); *see also In re Bayer Aktiengesellschaft*, 488 F.3d 960, 964 (Fed. Cir. 2007). "[M]arks that are merely descriptive cannot be registered unless they acquire secondary meaning under § 2(f) of the [Trademark] Act." *N.C. Lottery*, 866 F.3d at 1366 (citing 15 U.S.C. § 1052(f)); *see also Park 'N Fly*, 469 U.S. at 194. In determining whether a mark has acquired distinctiveness, or secondary meaning, the Board may consider the following factors: "(1) association of the [mark] with a particular source by actual purchasers (typically measured by customer surveys); (2) length, degree, and exclusivity of use; (3) amount and manner of advertising; (4) amount of sales and number of customers; (5) intentional copying; and (6) unsolicited media coverage of the product embodying the mark." *Converse, Inc. v. ITC*, 909 F.3d 1110, 1120 (Fed. Cir. 2018); *see also In re Steelbuilding.com*, 415 F.3d 1293, 1300 (Fed. Cir. 2005). "[T]he applicant's burden of showing acquired distinctiveness increases with the level of descriptiveness; a more descriptive term requires more evidence of secondary meaning." *Steelbuilding.com*, 415 F.3d at 1297 (citing *In re Bongrain Int'l (Am.) Corp.*, 894 F.2d 1316, 1317 (Fed. Cir. 1990)).

Whether a mark is merely descriptive, and whether an applicant has demonstrated acquired distinctiveness are questions of fact that we review for substantial evidence. *See In re TriVita, Inc.*, 783 F.3d 872, 874 (Fed. Cir. 2015) (mere descriptiveness); *In re La. Fish Fry Prods., Inc.*, 797 F.3d 1332, 1335 (Fed. Cir. 2015) (acquired distinctiveness).

We review the Board's conclusions of law de novo.  *See In re Thrifty, Inc.*, 274 F.3d 1349, 1351 (Fed. Cir. 2001).

JC Hospitality appeals the Board's conclusion that the proposed mark THE JOINT is generic for services in Classes 41 and 43.  JC Hospitality also appeals the Board's alternative conclusion that the mark THE JOINT is merely descriptive of services in Classes 41 and 43, and that JC Hospitality has not established acquired distinctiveness of the mark for either class of services.  Because we conclude that substantial evidence supports the Board's conclusions that THE JOINT is merely descriptive of the applied-for services, and that JC Hospitality did not establish acquired distinctiveness, we affirm the Board's decision.  We do not reach the Board's alternative basis for refusal that the mark is generic for the services in Classes 41 and 43.

A

The Board found that the THE JOINT is merely descriptive of JC Hospitality's services based on evidence showing that common use of the term "joint" describes restaurant and entertainment services as covered by Classes 41 and 43.  More particularly, the Board considered a number of dictionary definitions that were submitted by both the examining attorney and JC Hospitality during prosecution of the applications.  *See Board Decision*, at *4.  For example, the Oxford Dictionary defines "joint" as "[a]n establishment of a specified kind, especially one where people meet for eating, drinking, or entertainment."  J.A. 245–46, 885–86.  Similarly, Wiktionary defines "joint" as "[a] restaurant, bar, nightclub, or similar business."  J.A. 75, 904–06.  The Board concluded that this dictionary evidence "demonstrates that [JC Hospitality's] mark immediately conveys the idea of a business establishment that provides

live musical performances, shows, and concerts, and night-club, restaurant and bar services." *Board Decision*, at *11.[2]

The Board also considered a number of news excerpts submitted by the examining attorney during prosecution of both applications to demonstrate use of the term THE JOINT. *See Board Decision*, at *4–6. For example, one excerpt dated August 21, 2015, and published in the *San Jose Mercury News*, stated "History San Jose is gearing up for another fundraising celebration of Manny's Cellar on Sept. 18 in the historic downtown Fallon House, which was once home to the restaurant and bar. ***The joint*** was a haunt for the city's movers and shakers from 1962 until 1990." J.A. 242, 1075 (emphasis added). Another excerpt dated August 1, 2012, and published in the Newark *Star-Ledger*, stated "Delta's, situated in a former firehouse, is not your ordinary soul food restaurant. ***The joint*** jumps on Thursdays, Fridays and Saturdays, when DJs and jazz and R&B groups turn Delta's into a happening spot." J.A. 233–34, 1066–67 (emphasis added).

Other news excerpts submitted by the examining attorney during prosecution of both applications specifically considered use of the term JOINT without the definite article "the." *See Board Decision*, at *6. For example, an article published in the *Philadelphia Inquirer* on May 21, 2013, stated "Walter hopes to pursue a college degree in business and one day open his own music/restaurant ***joint***." J.A. 233, 1065–66 (emphasis added).

On appeal, JC Hospitality argues that the Board erred in finding THE JOINT merely descriptive because even if the marks are descriptive of its services, the mark is

---

[2]    Though neither JC Hospitality nor the examining attorney submitted a definition of "THE," the Board took judicial notice of three dictionaries defining "the" as a definite article. *Board Decision*, at *4.

registerable as a double entendre.  Appellant's Br. 35 (quoting Trademark Manual of Examining Procedure ("TMEP") § 1213.05(c) (A "'double entendre' will not be refused registration as merely descriptive if one of its meanings is not merely descriptive in relation to the goods or services.")).  Specifically, JC Hospitality argues that THE JOINT functions as a double entendre because it is "a playful or ironic reference to 'prison'" instead of to its services.  Appellant's Br. 35.  Thus, according to JC Hospitality, THE JOINT is registerable for its services because the term "prison" is not descriptive of them.  Appellant's Br. 35–36; *see also* TMEP § 1213.05(c).

The Board considered and rejected JC Hospitality's argument that THE JOINT is registerable as a double entendre for the applied-for services.  *Board Decision*, at *7–8.  The Board acknowledged that JC Hospitality submitted evidence that revealed "the joint" is one of several slang terms for prison.  *Id.*, at *8.  The Board, however, found this evidence unpersuasive because it did not demonstrate a relationship between prison and the applied-for services as required for proving a "double entendre" for trademark purposes.  *Id.*, at *7; *see also* TMEP § 1213.05(c) ("For trademark purposes, a 'double entendre' is an expression that has a double connotation or significance *as applied to the goods or services*.").  Indeed, only a single article describing a musician's plans for when he "get[s] out of the joint" had even a tangential relationship to JC Hospitality's services.  *Board Decision*, at *8.  Taken together, the Board found there was insufficient evidence in the record to demonstrate that consumers would associate "the concept of the 'the joint' as a prison with [JC Hospitality's] entertainment services, nightclub services, restaurants, bars, or catering services."  *Id.*, at *7.  We agree and conclude that substantial evidence supports the Board's conclusion that THE JOINT is not a double entendre for the services covered by either Class 41 or 43.

With respect to the '425 application only, JC Hospitality summarily argues in a single sentence that the evidence of record is insufficient to establish that THE JOINT is descriptive of live musical performances, shows, concerts, or nightclub services covered by Class 41. Appellant's Br. 36. JC Hospitality does not point to any specific failure of evidence, nor does JC Hospitality otherwise explain why the Board's decision is not supported by substantial evidence. We conclude that based on the record in this case, substantial evidence, including the dictionary definitions and news excerpts cited and relied on by the Board, supports the Board's finding that THE JOINT is merely descriptive of the entertainment services covered by Class 41.

Accordingly, we conclude that the Board's determination that THE JOINT is merely descriptive of the services covered by both Classes 41 and 43 is supported by substantial evidence.

## B

We now turn to JC Hospitality's argument that it demonstrated acquired distinctiveness for THE JOINT under Section 2(f) of the Trademark Act. JC Hospitality argues that the Board's determination that it did not demonstrate acquired distinctiveness is not supported by substantial evidence. We disagree.

For both applications, JC Hospitality asserted acquired distinctiveness by relying on two declarations by its Vice President of Entertainment, Charles Smith, which purported to include evidence related to revenue, advertising and marketing, and press and consumer recognition. JC Hospitality argues that the Smith Declarations and related exhibits demonstrate that THE JOINT has been in substantially exclusive and continuous use since March 1995. JC Hospitality also argues that the evidence shows more than $12 million in marketing expenditures for THE JOINT and a total gross revenue of more than $104 million. Furthermore, JC Hospitality argues that a variety of online

websites and forums (e.g., various social media websites, Yelp and TripAdvisor forums, and YouTube) show press and public recognition.

The Board considered JC Hospitality's evidence but concluded that relative to the "highly descriptive nature" of THE JOINT, the evidence was insufficient to demonstrate that the mark had acquired distinctiveness. *Board Decision*, at \*12 (citing *Steelbuilding.com*, 415 F.3d at 1297). The Board observed that JC Hospitality's services are limited to a single venue within the Hard Rock Hotel and Casino in Las Vegas, Nevada, and found the sales and marketing figures unpersuasive of acquired distinctiveness because there was no context for how those figures compared to similar restaurants and nightclubs. *Board Decision*, at \*12. The Board also carefully reviewed JC Hospitality's remaining evidence but found it similarly lacked context and was unpersuasive because the mark THE JOINT often appeared in connection with other marks (e.g., "Hard Rock" or "Hard Rock Hotel & Casino"). The Board stated that "it is unclear which mark . . . attracts public attention." *Id.*, at \*12. Thus, the Board concluded that JC Hospitality failed to demonstrate that THE JOINT is perceived as identifying the source of its services and therefore that it had not shown acquired distinctiveness. *Id.*, at \*13.

On appeal, JC Hospitality argues that the Board required an impossible level of evidence by requiring more context for its sales and marketing figures. JC Hospitality also argues that reference to other marks in its evidence is either sporadic or of secondary significance, and that the Board erred by calling into question which mark had attracted public attention.

We do not agree with JC Hospitality that in this case the Board required too high a burden to show acquired distinctiveness. The Board correctly determined that a high level of proof was required to show acquired distinctiveness

for the mark THE JOINT. *See Steelbuilding.com*, 415 F.3d at 1297; *see also Royal Crown Co., Inc. v. The Coca-Cola Co.*, 892 F.3d 1358, 1368–69 (Fed. Cir. 2018). As a result, we do not find error in the Board's challenges to JC Hospitality's evidence, which it found failed to provide information showing how JC Hospitality's sales and marketing figures compared to similar businesses. Indeed, we agree with the Board that such questions are particularly appropriate where record evidence showed significant overlap between JC Hospitality's use of THE JOINT with other marks. *See Fish Fry*, 797 F.3d at 1337 (discounting advertising expenditures concerning FISH FRY PRODUCTS where the evidence relied on included ads promoting another mark). Given the prominence of "Hard Rock" and "Hard Rock Hotel & Casino" in the evidence submitted, and the relationship of those marks to the applied-for services, we are unpersuaded that they are of secondary significance. Thus, we conclude that the Board's finding that JC Hospitality has not demonstrated acquired distinctiveness is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, we affirm the Board's affirmance of the refusal to register THE JOINT for services under either Class 41 or 43.

## **AFFIRMED**