Opinion for the court filed by Circuit Judge REYNA.
Concurring opinion filed by Circuit Judge NEWMAN.
REYNA, Circuit Judge.
Louisiana Fish Fry Products, Ltd. (“Louisiana Fish Fry”) appeals the Trademark Trial and Appeal Board’s' (the “Board”) decision affirming the refusal to register the mark LOUISIANA FISH FRY PRODUCTS BRING THE TASTE OF LOUISIANA HOME! without a disclaimer of FISH FRY PRODUCTS. Because substantial evidence supports the Board’s finding that Louisiana Fish Fry has not established that FISH FRY *1334 PRODUCTS has acquired distinctiveness, we affirm.
BACKGROUND
Louisiana Fish Fry filed a use-based application with the Patent and Trademark Office (“PTO”) for the mark LOUISIANA FISH FRY PRODUCTS BRING THE TASTE OF LOUISIANA HOME!, and the design shown below.
[[Image here]]
Louisiana Fish Fry identified the following goods for the mark: “Marinade; Sauce mixes, namely barbecue shrimp sauce mix; Remoulade dressing; Cocktail sauce, Seafood sauce; Tartar sauce; Gumbo file; and Cayenne pepper.” During prosecution, the Examining Attorney refused to register the mark absent a disclaimer of FISH FRY PRODUCTS on the basis that this term is not independently registrable.
Louisiana Fish Fry argued that a disclaimer of FISH FRY PRODUCTS was not necessary because the term was both not generic and it had acquired distinctiveness. In support of this position, Louisiana Fish Fry submitted a declaration of its President, William Pizzolato, stating that Louisiana Fish Fry had been using LOUISIANA FISH FRY PRODUCTS for at least thirty years. Mr. Pizzolato also provided sales and advertising data for products bearing the mark LOUISIANA FISH FRY PRODUCTS. Louisiana Fish Fry further contended that its other registrations containing LOUISIANA FISH FRY PRODUCTS also showed that FISH FRY PRODUCTS had acquired distinctiveness.
The Examining Attorney maintained the requirement to disclaim FISH FRY PRODUCTS, asserting that the term was generic. Citing numerous articles and recipes, the Examining Attorney asserted that the relevant public understands “fish fry” to identify fried fish meals. The dictionary definition of “products” indicated that the relevant public understands this word to mean “the goods or services produced by a company.” Combining these findings, the Examining Attorney found FISH FRY PRODUCTS to be generic because the cited evidence indicated that the relevant public understood the term to refer to sauces, marinades and spices used on or with fish fries or fried fish.
In the alternative, the Examining Attorney noted that FISH FRY PRODUCTS is, at least, “highly descriptive,” thus elevating the burden Louisiana Fish Fry had to meet to show acquired distinctiveness. The Examining Attorney concluded that Louisiana Fish Fry failed to carry its burden because the evidence it submitted only related to the term LOUISIANA FISH FRY PRODUCTS, not specifically to FISH FRY PRODUCTS. Louisiana Fish Fry’s other registrations were similarly insufficient, because the phrase FISH FRY *1335 PRODUCTS was disclaimed in these prior registrations. The Examining Attorney thus maintained that, even if the term was not generic, it was still not registrable because Louisiana Fish Fry failed to show that it had acquired distinctiveness.
On appeal, the Board affirmed. In re La. Fish Fry Prods., Ltd., No. 77816809 (T.T.A.B.2013) (“Board Op.”). First addressing genericness, the Board determined that the genus of the goods at issue is “sauces, marinades and spices,” and that clear evidence established that the relevant public understands FISH FRY PRODUCTS to “identify a type of sauce, marinade or spice used for fish fries.” Id. at *7-8. The Board agreed with the Examining Attorney that the record evidence showed that the relevant public understands “fish fry” to refer to fried fish meals. Id. at *8-16. Quoting a dictionary definition, the Board further found that the relevant public understands “products” to mean, inter alia, “something produced; especially: COMMODITY (2): something ... that is marketed or sold as a commodity.” Id. at *8 (citing Merriam-Webster Online (Merriam-webster.com)) (ellipsis in the Board Op.). The Board determined that FISH FRY PRODUCTS is generic because “fish fry” and “products” retain their “generic significance” when combined. Board Op. at *17.
The Board also affirmed the Examining Attorney’s conclusion that Louisiana Fish Fry failed to carry its burden of showing that FISH FRY PRODUCTS has acquired distinctiveness. Id. at *27. The evidence that Louisiana Fish Fry submitted only related to the mark LOUISIANA FISH FRY PRODUCTS, and not specifically to FISH FRY PRODUCTS. Id. at *27. The Board thus affirmed the Examining Attorney’s refusal to register LOUISIANA FISH FRY PRODUCTS BRING THE TASTE OF LOUISIANA HOME! without a disclaimer of FISH FRY PRODUCTS. Id. at *28.
Disoussion
Louisiana Fish Fry challenges the PTO’s requirement that it must disclaim FISH FRY PRODUCTS as a condition for registering the mark LOUISIANA FISH FRY PRODUCTS BRING THE TASTE OF LOUISIANA HOME!. Specifically, Louisiana Fish Fry contends that the PTO failed to meet its burden to establish that the term FISH FRY PRODUCTS is generic and that the term has acquired distinctiveness.
We review the Board’s legal conclusions de novo and its factual determinations for substantial evidence. In re Dial-A-Mattress Operating Corp., 240 F.3d 1341, 1344 (Fed.Cir.2001). Genericness and acquired distinctiveness are factual determinations that we review for substantial evidence. In re 1800Mattress.com IP, LLC, 586 F.3d 1359, 1361 (Fed.Cir.2009); G.H. Mumm & Cie v. Desnoes & Geddes, Ltd., 917 F.2d 1292, 1294 (Fed.Cir.1990). The PTO bears the burden of proving genericness by clear evidence. In re Merrill Lynch, Pierce, Fenner, & Smith, Inc., 828 F.2d 1567, 1571 (Fed.Cir.1987). The applicant, however, bears the burden of proving acquired distinctiveness. In re Steelbuilding.com, 415 F.3d 1293, 1297 (Fed.Cir.2005). The PTO can condition the registration of a larger mark on an applicant’s disclaimer of an “unregistrable component of a mark otherwise registrable.” 15 U.S.C. § 1056(a); In re Stereotaxis, Inc., 429 F.3d 1039, 1041 (Fed.Cir.2005). Disclaiming unregistrable components prevents the applicant from asserting exclusive rights in the disclaimed un-registrable terms. See In re Wada, 194 F.3d 1297, 1301 (Fed.Cir.1999).
Section 2(e)(1) of the Lanham Act precludes registration of a mark that *1336 “when used on or in connection with the goods of the applicant is merely descriptive ... of them.” 15 U.S.C. § 1052(e)(1). Some descriptive marks can, however, acquire distinctiveness and may be registrable on that basis. 15 U.S.C. § 1052(f). A generic mark, being the “ultimate in descriptiveness,” cannot acquire distinctiveness. H. Marvin Ginn Corp. v. Int'l Ass’n of Fire Chiefs, Inc., 782 F.2d 987, 989 (Fed.Cir.1986).
We do not need to reach the Board’s genericness determination because we hold that substantial evidence supports the Board’s determination that Louisiana Fish Fry failed to show that FISH FRY PRODUCTS has acquired distinctiveness. In general, to establish that a term has acquired distinctiveness, “an applicant must show that in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself.” Coach Servs., Inc. v. Triumph Learning LLC, 668 F.3d 1356, 1379 (Fed.Cir.2012) (internal quotation marks omitted). To meet this burden, the applicant can cite evidence such as advertising expenditures and sales success, and length and exclusivity of use. Id. Here, the Board noted that because FISH FRY PRODUCTS is “highly descriptive,” Louisiana Fish Fry faces an elevated burden to establish acquired distinctiveness. Board Op. at *20. The Board concluded that Louisiana Fish Fry had not carried this burden because the evidence that it cited did not relate specifically to the term at issue, i.e., FISH FRY PRODUCTS. Id. at *27-28.
On appeal, Louisiana Fish Fry does not challenge the Board’s finding that the term FISH FRY PRODUCTS is highly descriptive. Rather, Louisiana Fish Fry argues that the Board erred by considering each piece of evidence that it cited separately in a vacuum, not as a whole. Appellant Br. 20-21. Louisiana Fish Fry also argues that the Board improperly disregarded other registrations because the term FISH FRY PRODUCTS had been disclaimed in some of those registrations. Id. at 26-27. Finally, Louisiana Fish Fry argues that the Board ran afoul of the “reasoned deci-sionmaking” doctrine because its previous determination allegedly conflicts with its determination in Kellogg Co. v. General Mills Inc., No. 91125884, 2007 WL 499921 (T.T.A.B.2007). Id. at 22-26.
The PTO responds that the Board correctly found that none of Louisiana Fish Fry’s evidence relates specifically to the public’s understanding of the term FISH FRY PRODUCTS. Appellee Br. 36-37. Louisiana Fish Fry’s prior registrations similarly do not evidence source-identifying capability because they include other words beyond FISH FRY PRODUCTS. Id. at 40-42. The “reasoned decisionmak-ing” doctrine does not, according to the PTO, control in this case because that doctrine applies for different decisions based on the same legal standard, and the relevant standards for this case and Kellogg are different. Id. at 37-40.
Substantial evidence supports the Board’s conclusion that Louisiana Fish Fry has not established that FISH FRY PRODUCTS has acquired distinctiveness. To show that FISH FRY PRODUCTS had acquired distinctiveness, Louisiana Fish Fry provided two declarations from its President, Mr. Pizzolato, and five registrations that include the term FISH FRY PRODUCTS. In his first declaration, Mr. Pizzolato states that FISH FRY PRODUCTS has become distinctive through Louisiana Fish Fry’s “substantially exclusive and continuous use” of the mark for at least the last five years. J.A. 103. Although Section 2(f) of the Lanham Act, 15 U.S.C. § 1052(f), provides that that the PTO may accept five years of “substantial *1337 ly exclusive and continuous” use as prima facie evidence of acquired distinctiveness, the statute does not require the PTO to do so. Particularly for a mark that is as highly descriptive like FISH FRY PRODUCTS, the Board was within its discretion not to accept Louisiana Fish Fry’s alleged five years of substantially, exclusive and continuous use as prima facie evidence of acquired distinctiveness.
In his second declaration, Mr. Pizzolato stated that “[o]ver the past thirty (30) years, we have used the mark LOUISIANA FISH FRY PRODUCTS on a wide variety of food products.” J.A. 464. Mr. Pizzolato also provided Louisiana Fish Fry’s gross sales figures for food products bearing LOUISIANA FISH FRY PRODUCTS for 2007-2010. J.A. 465. According to Mr. Pizzolato, from 2009 to 2011 Louisiana Fish Fry also expended over $ 2.4 million on advertising bearing LOUISIANA FISH FRY PRODUCTS. J.A. 466. As the PTO points out, however, all of these data involve uses of LOUISIANA FISH FRY PRODUCTS, and thus do not establish that FISH FRY PRODUCTS has acquired distinctiveness. In re Chem. Dynamics, Inc., 839 F.2d 1569, 1571 (Fed.Cir.1988).
Similarly Louisiana Fish Fry’s reliance on other registrations that include the term FISH FRY PRODUCTS is misplaced. Contrary to Louisiana Fish Fry’s contentions, the Board thoroughly considered these registrations. The Board correctly determined that none of these marks indicate that FISH FRY PRODUCTS has acquired distinctiveness. Three of those registrations, nos. 2794015, 2827057, and 2827571, are for the same mark as the one at issue here, i.e., LOUISIANA FISH FRY PRODUCTS BRING THE TASTE OF LOUISIANA HOME!. The remaining registrations, nos. 28018982 and 2827058, are for the mark LOUISIANA FISH FRY PRODUCTS. Thus, viewed separately or as a whole, Louisiana Fish Fry’s evidence does not establish that the specific term at issue here, FISH FRY PRODUCTS, has acquired distinctiveness.
Finally, we agree with the PTO that the Board’s decision did not run afoul of the “reasoned decisionmaking” doctrine. Under this doctrine, courts will set aside an agency’s decision if it is not “supported by the reasons that the agene[y] adduce[s].” Allentown Mack Sales & Serv., Inc. v. N.L.R.B., 522 U.S. 359, 374, 118 S.Ct. 818, 139 L.Ed.2d 797 (1998). The Board, however, provided detailed reasons for why it determined that FISH FRY PRODUCTS has not acquired distinctiveness, and Louisiana Fish Fry does not argue to the contrary. Even if the Board’s decision contradicted Kellogg, which it does not, Louisiana Fish Fry has failed to explain how such a conflict implicates the reasoned decisionmaking doctrine.
CONCLUSION
We hold that substantial evidence supports the Board’s determination that Louisiana Fish Fry did not carry its burden of showing that FISH FRY PRODUCTS acquired distinctiveness. On that basis, the PTO’s decision refusing to register LOUISIANA FISH FRY PRODUCTS BRING THE TASTE OF LOUISIANA HOME! absent a disclaimer of FISH FRY PRODUCTS is affirmed.
AFFIRMED
Costs
No costs.