This Opinion is a
Precedent of the TTAB

Hearing: July 26, 2016                                   Mailed: December 29, 2016

UNITED STATES PATENT AND TRADEMARK OFFICE

————

Trademark Trial and Appeal Board

————

*In re LC Trademarks, Inc.*

————

Serial No. 85890412

————

Josh A. Partington and David R. Haarz of Harness, Dickey & Pierce PLC,
    for LC Trademarks, Inc.

Joanna M. Shanoski, Trademark Examining Attorney, Law Office 104,
    Dayna Browne, Managing Attorney.

————

Before Taylor, Gorowitz and Heasley,
    Administrative Trademark Judges.

Opinion by Heasley, Administrative Trademark Judge:

LC Trademarks, Inc. ("Applicant") seeks registration on the Principal Register of

the mark DEEP!DEEP! DISH PIZZA (in standard characters, with "DEEP DISH

PIZZA" disclaimed) for pizza in International Class 30 under Section 2(f) of the

Trademark Act.[1]

The Trademark Examining Attorney has refused registration of Applicant's mark

on the ground that it is merely descriptive under Section 2(e)(1) of the Trademark

---

[1] Application Serial No. 85890412 was filed on March 29, 2013 based upon Applicant's claim
of first use anywhere and use in commerce since at least as early as March 18, 2013.

Act, 15 U.S.C. § 1052(e)(1), and has not acquired distinctiveness under Section 2(f) of the Act. 15 U.S.C. § 1052(f).

Applicant appealed to this Board. We affirm the refusal to register.

## I.  Descriptiveness

The Lanham Act precludes registration of a term that is merely descriptive of an applicant's goods. 15 U.S.C. § 1052(e)(1). A mark is merely descriptive "if it immediately conveys knowledge of a quality, feature, function, or characteristic of the goods or services with which it is used." *In re Chamber of Commerce of the United States of America*, 675 F.3d 1297, 102 USPQ2d 1217, 1219 (Fed. Cir. 2012) (quoting *In re Bayer Aktiengesellschaft,* 488 F.3d 960, 82 USPQ2d 1828, 1831 (Fed. Cir. 2007)).

Because Applicant seeks registration on the basis of Section 2(f), there is no issue as to whether DEEP!DEEP! DISH PIZZA, is descriptive of its identified goods, pizza. *See generally Cold War Museum, Inc. v. Cold War Air Museum, Inc.*, 586 F.3d 1352, 92 USPQ2d 1626, 1629 (Fed. Cir. 2009) (where "an applicant seeks registration on the basis of Section 2(f), the mark's descriptiveness is a nonissue; an applicant's reliance on Section 2(f) during prosecution presumes that the mark is descriptive."); *Yamaha Int'l Corp. v. Hoshino Gakki Co., Ltd.,* 840 F.2d 1572, 6 USPQ2d 1001, 1005 (Fed. Cir. 1988). "'[B]y seeking registration under Section 2(f), applicant has conceded lack of inherent distinctiveness and must prove acquired distinctiveness.'" *In re Tires, Tires, Tires Inc.*, 94 USPQ2d 1153, 1157n.3 (TTAB 2009) (quoting *In re MGA Entertainment, Inc.,* 84 USPQ2d 1743, 1747 (TTAB 2007)). *See also In re Cordua Rests. LP,* 110 USPQ2d 1227, 1233 (TTAB 2014), *aff'd,* 118 USPQ2d 1632 (Fed. Cir. 2016).

## II. Acquired Distinctiveness

Matter that is merely descriptive under Section 2(e)(1) may nonetheless be registered on the Principal Register under Section 2(f) if it has become distinctive of an applicant's goods or services. 15 U.S.C. § 1052(f); *Cold War Museum,* 92 USPQ2d at 1629.

### A. Applicant's Burden

An applicant bears the burden of proving acquired distinctiveness. *In re La. Fish Fry Prods., Ltd.,* 797 F.3d 1332, 116 USPQ2d 1262, 1264 (Fed. Cir. 2015); *In re Fantasia Dist., Inc.,* 120 USPQ2d 1137, 1143 (TTAB 2016). "To show that a mark has acquired distinctiveness, an applicant must demonstrate that the relevant public understands the primary significance of the mark as identifying the *source* of a product or service rather than the product or service itself." *In re Steelbuilding.com*, 415 F.3d 1293, 75 USPQ2d 1420, 1422 (Fed.Cir. 2005) (emphasis added).

The more descriptive the term, the greater an applicant's evidentiary burden to establish acquired distinctiveness. *Id.* at 1424; *In re Bongrain Int'l (Am.) Corp.*, 894 F.2d 1316, 13 USPQ2d 1727, 1728n.4 (Fed. Cir. 1990) (citing *Yamaha,* 6 USPQ2d at 1008); *In re Country Music Ass'n Inc.,* 100 USPQ2d 1824, 1834 (TTAB 2011). Highly descriptive terms are less likely to be perceived as trademarks than less descriptive terms, and are more likely to be useful to competing sellers. Accordingly, more substantial evidence of acquired distinctiveness will ordinarily be required to establish that such terms truly function as source indicators. *In re Greenliant Systems Ltd.*, 97 USPQ2d 1078, 1085 (TTAB 2010).

3

Applicant acknowledges this proportionality, but argues that DEEP!DEEP! DISH PIZZA is a unitary phrase—a phrase that, taken as a whole, creates a new and different commercial impression from that engendered by its component words, thereby diminishing its degree of descriptiveness.[2] Applicant contends that the repetition of the word DEEP! alters the meaning and impression that are ordinarily conveyed by the single word DEEP alone. We disagree. Considering the meaning of the word "deep" in the common expression "deep dish pizza," members of the relevant public would likely view the repetition of DEEP! merely as an emphatic description of the bountiful quality of Applicant's deep dish pizza. *See In re Disc Jockeys,* where the Board found that repetitive use of the term "DJ" as "DJDJ" for disc jockey services did not diminish its descriptiveness:

> *We do not believe that DJDJ is rendered any less descriptive by repeating the letters.* … At best, on seeing DJDJ, it would occur to a viewer that the letters are repeated for emphasis. There is nothing in the composite which changes the meaning of the letters in any manner which would give them a different meaning. If one were to express the view that milk was "creamy creamy" or that a red bicycle was "red red" or that a razor was "sharp sharp", the repetition of the words "creamy", "red" and "sharp" would be understood as emphasis and the combinations of these words would not, simply because of their repetition, be rendered something more than descriptive. Nothing new or different is imparted by the simple repetition of the descriptive expression DJ. *Thus, the composite expression is, in our view, equally descriptive* as used in connection with the identified services.

*In re Disc Jockeys, Inc.,* 23 USPQ2d 1715, 1716 (TTAB 1992) (emphasis added) *cited in In re Tires, Tires, Tires,* 94 USPQ2d at 1156 (TIRES TIRES TIRES generic for retail tire store services); *In re Jonathan Drew Inc.,* 97 USPQ2d 1640, 1644 (TTAB 2011) (repetition in KUBA KUBA does not alter its geographic descriptiveness). *See*

---

[2] Applicant's brief, pp. 8-10, 13 TTABVUE 13-15.

4

*generally* J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION §§ 11:28.5, 12:39 (4th ed. Sept. 2016 update) (repetition of descriptive or generic terms).

The Examining Attorney has submitted webpages demonstrating that "deep dish pizza" is merely a type of pizza, e.g.:

- Better Homes and Gardens' BHG.com -- "How to Make Deep-Dish Pizza"

- Unos.com – "deep dish two ways"

- RedBaron.com – "Deep Dish Pizza Singles"

- WashingtonPost.com -- Going Out Guide: "What's the best deep dish pizza in the D.C. area?"

- WEBstaurantStore.com – "Deep Dish Pizza Pans"

- PizzaMaking.com -- "Chicago Style Deep Dish Pizza"[3]

As the Examining Attorney observes, the mark's repetition of "DEEP!" conveys the impression of added depth, "perhaps somewhat deeper than a general deep dish pizza."[4] We agree. As in *In re Disc Jockeys* (DJDJ), Applicant's repetitive use of DEEP! does not reduce its descriptiveness; it merely serves as an intensifier, underscoring the highly descriptive nature of the term. *See also In re Litehouse Inc.*, 82 USPQ2d 1471, 1474 (TTAB 2007) (addition of exclamation point does not diminish the descriptive nature of a term). Consequently, Applicant bears a proportionately heavy burden in establishing that its applied-for mark has acquired distinctiveness. *In re Country Music Ass'n,* 100 USPQ2d at 1834.

---

[3] Office Action of March 24, 2014, pp. 6-15; Office Action of Aug. 29, 2013, pp. 4-28.

[4] Office Action of March 24, 2014, p. 2.

## B. Proving Acquired Distinctiveness

Section 2(f) is silent as to the evidence required to prove acquired distinctiveness, except for suggesting that an applicant's substantially exclusive and continuous use of a mark in commerce for the five years immediately preceding its application *may* be accepted as prima facie evidence that the mark has become distinctive. 15 U.S.C. § 1052(f). *Yamaha,* 6 USPQ2d at 1008. But if the mark is highly descriptive of the goods or services named in the application, five years' use alone may be insufficient to establish acquired distinctiveness. *See In re La. Fish Fry*, 116 USPQ2d at 1265 (holding that the Board acted within its discretion when it chose not to find applicant's allegation of five years' use sufficient, given the highly descriptive nature of the mark). In this case, Applicant admits that it has used the DEEP!DEEP! DISH PIZZA mark in commerce for fewer than five years.[5] Of course, an applicant that has used its mark for less than five years may seek to demonstrate acquired distinctiveness by means of other evidence. In determining whether secondary meaning has been acquired, the Board may also examine, among other things, "copying, advertising expenditures, sales success, length and exclusivity of use, unsolicited media coverage, and consumer studies (linking the name to a source). …. On this list, no single factor is determinative." *In re Tires, Tires, Tires Inc.*, 94 USPQ2d at 1157 (citation omitted). *See* 37 C.F.R. § 2.41(a)(3) (various means of proving acquisition of secondary meaning from use in commerce). *In re La. Fish Fry*, 116 USPQ2d at 1265.

---

[5] Sept. 3, 2015 Response to Office Action.

## C. The family of marks doctrine

In this case, rather than base its claim of acquired distinctiveness solely on its use of DEEP!DEEP! DISH PIZZA, Applicant contends that its mark is a member of its "family" of double word marks, which helps it acquire distinctiveness.[6]

"A family of marks is a group of marks having a recognizable common characteristic, wherein the marks are composed and used in such a way that the public associates not only the individual marks, but the common characteristic of the family, with the trademark owner." *J & J Snack Foods Corp. v. McDonald's Corp.,* 932 F.2d 1460, 18 USPQ2d 1889, 1891 (Fed. Cir. 1991) (recognizing family of "Mc" formative marks) *quoted in* 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:61 (4th ed. 2016). There may be a family of marks if the purchasing public recognizes that the common characteristic indicates a common origin of goods or services. *Han Beauty, Inc. v. Alberto-Culver Co.,* 236 F.3d 1333, 57 USPQ2d 1557, 1559 (Fed. Cir. 2001).

### 1. The Applicant and Examining Attorney's arguments regarding the family of marks doctrine

Applicant owns a number of registrations for what it calls "double word" marks, which have a repeated word with exclamation points after each word:[7]

PIZZA!PIZZA! Reg. No. 1,399,730
PIZZA!PIZZA! Reg. No. 1,439,558
BABY PAN!PAN! Reg. No. 1,594,459
CHEESER! CHEESER! Reg. No. 1,973,718
CRAZY!CRAZY! COMBO Reg. No. 2,941,513
EXTRA!EXTRA! Reg. No. 3,678,190
HOCKEY!HOCKEY! Reg. No. 3,832,400

---

[6] Applicant's brief, p. 7, 13 TTABVUE 12.

[7] Applicant's brief, p. 4, 13 TTABVUE 9.

LITTLE CAESARS CHEESER!CHEESER! Reg. No. 1,708,478
MEATSA!MEATSA! Reg. No. 1,801,643
PARTY!PARTY! PACK Reg. No. 1,594,701
PARTY!PARTY! Reg. No. 2,026,218
PEPPERONI!PEPPERONI! Reg. No. 1,813,907
PICNIC!PICNIC! Reg. No. 1,757,061
SLICE!SLICE! Reg. No. 4,344,357 (Supplemental Register)
THANK YOU! THANK YOU! Reg. No. 2,348,053
VALUE!VALUE! Reg. No. 2,502,119
VEGGIE!VEGGIE! Reg. No. 1,828,443.[8]

Applicant contends that "consumers will easily connect the DEEP!DEEP! DISH PIZZA mark with Applicant because in the world of pizza restaurants, double word marks mean Little Caesars."[9] In support of this claim, it argues:

> Applicant, LC Trademarks, Inc., is the owner of the DEEP!DEEP! DISH PIZZA trademark that it licenses to its exclusive licensee, Little Caesar Enterprises, Inc. ("Little Caesars"). Little Caesars is a nationwide chain of pizza restaurants. The first Little Caesars restaurant opened in Garden City, Michigan in 1959. Since then Little Caesars has grown into one of the world's largest carry-out pizza chains and is nationally recognized in connection with pizza. …
>
> Since its inception in 1959, Little Caesars has used many different trademarks in association with its pizza restaurants and the pizza and other goods sold to the public in those restaurants. Other than LITTLE CAESARS, its most famous mark is PIZZA!PIZZA!, first used in commerce in 1980 and first registered in 1986.[10]

According to Applicant, "The Little Caesar's family of double word marks has been integral in a tremendously successful business whose history spans decades and

---

[8] Feb. 28, 2014 Response to Office Action, p. 2, 33-92with copies of Certificates of Registration and printouts from TSDR data base. In addition to the marks listed, Applicant made of record Certificates of Registration for over 25 other registrations, now cancelled, for double word marks. These cancelled registrations have little or no probative value. *See Bond v. Taylor,* 119 USPQ2d 1049, 1054 (TTAB 2016).

[9] Applicant's brief, p. 7, 13 TTABVUE 12.

[10] Feb. 28, 2014 Response to Office Action, pp. 1-2; Applicant's brief, p. 4, 13 TTABVUE 9.

includes billions of dollars in revenue."[11] Applicant explains how the existence of its claimed family helps its subject mark acquire distinctiveness:

> At times, secondary meaning can be slow to develop because a new mark must break through consumer's existing associations with the descriptive term. Here, where Applicant owns a well-known and long used family of marks, the use of the family surname in the DEEP!DEEP! DISH PIZZA mark makes secondary meaning much easier to achieve.[12]

The Examining Attorney's response to Applicant's "family of marks" argument challenges both its legal and factual sufficiency. First, the Examining Attorney argues that Applicant has provided no legal support for the proposition that the Office accepts a 'family of marks' argument in an *ex parte* proceeding, or as a basis for a claim of acquired distinctiveness.[13] Citing Trademark Rule 2.41(a)(1), 37 C.F.R. § 2.41(a)(1), the Examining Attorney maintains that a claim of acquired distinctiveness may be based, in whole or in part, on Applicant's ownership of one or more registrations for the <u>same</u> mark, but not on a series of different registered marks.[14] *See* Trademark Manual of Examining Procedure ("TMEP") § 1212.04(b) (Oct. 2016).[15]

---

[11] Applicant's brief, p. 2, 13 TTABVUE 7.

[12] Applicant's brief, p. 12, 13 TTABVUE 17. Although "secondary meaning" is often used interchangeably with "acquired distinctiveness," we favor the latter term, which appears in Section 2(f).

[13] Office Action of March 4, 2015, p. 1; *citing inter alia* TMEP §§ 1207.01(d)(xi), 1212.04(b).

[14] Office Action of March 24, 2014, p. 2.

[15] An applied-for mark is considered the same mark if it is the legal equivalent of the previously-registered mark. *In re Dial-A-Mattress Operating Corp.*, 240 F.3d 1341, 57 USPQ2d 1807, 1812 (Fed. Cir. 2001); TMEP §1212.04(b). "A mark is the legal equivalent of another if it creates the same, continuing commercial impression such that the consumer would consider them both the same mark." *Id. See generally, Hana Financial, Inc. v. Hana Bank,* __ U.S. __, 135 S.Ct. 907, 113 USPQ2d 1365 (2015) (jury may tack legally equivalent marks to determine priority of use).

Second, the Examining Attorney argues, because establishing a family of marks requires an assessment of how the family is used in the marketplace and exposed to the purchasing public, examining attorneys, who generally lack access to this sort of evidence and information, have been instructed to refrain from advancing or invoking this doctrine in the context of a Section 2(d) likelihood-of-confusion analysis.[16]

Third, the Examining Attorney continues, even if a family of marks could be a basis for claiming acquired distinctiveness, Applicant's claimed "double word" family of marks is so broadly defined that consumers would not recognize it as a family and competitors would be unfairly barred from using descriptive double-word combinations.[17]

The Examining Attorney concludes that Applicant's position is essentially "an exercise in weighing the public's perception of its registered marks and guessing at the impact of that recognition on the instant mark. There is not enough evidence in the record to make such a determination."[18]

Applicant rejoins that its family is limited to pizza and pizza restaurants, and that the Examining Attorney's arguments—which begin by categorically rejecting a "family of marks" basis for proving acquired distinctiveness in *ex parte* proceedings before addressing the strength of Applicant's evidence—fail to accord Applicant's argument serious consideration or weight.[19]

---

[16] *See, e.g., In re Hitachi High-Techs. Corp.*, 109 USPQ2d 1769, 1772 (TTAB 2014); *In re Mobay Chem. Co.*, 166 USPQ 218, 219 (TTAB 1970); TMEP § 1207.01(d)(xi).

[17] Examining Attorney's brief, 17 TTABVUE 12.

[18] Examining Attorney's brief, 17 TTABVUE 11.

[19] Applicant's reply brief, pp. 1, 3, 18 TTABVUE 5, 7.

2. **Whether, in an *ex parte* proceeding, an applicant's evidence of a family of marks may be considered to help prove acquisition of distinctiveness for a new member of that putative family**

On consideration of Applicant's and the Examining Attorney's arguments, we find that an applicant may, in the context of *ex parte* prosecution of an application that has been refused registration under Section 2(e)(1), present evidence of a family of marks to help prove acquired distinctiveness of a new member of that family under Section 2(f). Unlike Trademark Rule 2.41(a)(1), which provides that a prior registration of the same mark may be accepted as prima facie evidence of the applied-for mark's distinctiveness, Rule 2.41(a)(3) permits the applicant to submit more expansive evidence of distinctiveness:

> (3) *Other evidence.* In appropriate cases, where the applicant claims that a mark has become distinctive in commerce of the applicant's goods or services, the applicant may, in support of registrability, submit with the application, or in response to a request for evidence or to a refusal to register, verified statements, depositions, or other appropriate evidence showing duration, extent, and nature of the use in commerce and advertising expenditures in connection therewith (identifying types of media and attaching typical advertisements), and verified statements, letters or statements from the trade or public, or both, or other appropriate evidence of distinctiveness.

37 C.F.R. § 2.41(a)(3). An applicant's "other appropriate evidence of distinctiveness" could consist of market evidence establishing a family of marks. Applicants have access to this sort of market evidence and information, unlike examining attorneys, and can advance and invoke the family of marks doctrine in the context of a Section 2(f) acquired distinctiveness analysis.

"[T]he rationale for the 'family of marks' theory is that a party has in effect established a 'secondary meaning' in a term which serves as the characteristic feature of a number of marks used and promoted together by him in his field of endeavor...."

11

*Merritt Foods Co. v. Americana Submarine*, 209 USPQ 591, 597 (TTAB 1980) *quoted in 7-Eleven Inc. v. Wechsler,* 83 USPQ2d 1715, 1720 (TTAB 2007). As the Federal Circuit has put it, "Recognition of the family is achieved when the pattern of usage of the common element is sufficient to be indicative of the origin of the family. It is thus necessary to consider the use, advertisement, and distinctiveness of the marks, including assessment of the contribution of the common feature to the recognition of the marks as of common origin." *J & J Snack Foods. v. McDonald's,* 18 USPQ2d at 1891-92. S*ee also* 4 McCarthy on Trademarks and Unfair Competition § 23:61 (4th ed. 2016); 5 Callmann on Unfair Competition, Trademarks and Monopolies § 21:47 (4th ed. June 2016 update) ("In effect, to establish the existence of a family relationship the trademark proprietor must meet something like a secondary meaning standard.").

This market evidence is the sort of evidence that applicants already submit and examining attorneys already evaluate in determining if individual marks have acquired secondary meaning under Section 2(f). *See In re Owens-Corning Fiberglas Corp.*, 774 F.2d 1116, 227 USPQ 417, 422 (Fed. Cir. 1985). The issue in this case is unlike the issue presented in an *ex parte* Section 2(d) likelihood-of-confusion proceeding, where neither the examining attorney nor the applicant is permitted to invoke the family of marks doctrine. *See*, e.g., *In re Hitachi*, 109 USPQ2d at 1772; *In re Mobay*, 166 USPQ at 219; *In re Cynosure, Inc.*, 90 USPQ2d 1644, 1645 (TTAB 2009). TMEP § 1207.01(d)(xi). While we acknowledge the examining attorney's contention that the bar against reliance on a family of marks argument should apply

equally in Section 2(d) and 2(e)(1) appeals, we disagree, and find applicant's reliance on evidence of a family of marks appropriate in this case.

Once it is proven, the existence of a family of marks may, in turn, help the owner of that family establish a new family member's acquired distinctiveness under Section 2(f). *See* 5-5 GILSON ON TRADEMARKS § 5.03 ("In a family of marks case, a court or the Trademark Trial and Appeal Board asks whether consumers would view the defendant's marks as members of the plaintiff's family of marks."). If an applicant had a well-established family of marks characterized by a common characteristic, and applied to register a mark with the same family characteristic, it could credibly argue that its prior family of marks would expedite the public's recognition of applied-for mark as a member of the family. *See Han Beauty,* 57 USPQ2d at 1559 (a family of marks arises "if the purchasing public recognizes that the common characteristic is indicative of a common origin of the goods."). "It is worth repeating that the essence of the family of marks doctrine is awareness by the relevant purchasing public that the plaintiff actually uses a plurality of marks all of which are characterized by a feature that, in plaintiff's line of endeavor, uniquely points to plaintiff as the source of goods or services." D. Kera, "Family of Marks—Tips from the TTAB" 67 Trademark Reporter 419 (1977). Hence, we hold that, in an *ex parte* proceeding under Section 2(f), an applicant may adduce, and an examining attorney must consider, evidence of the existence of a family of marks offered to help prove acquisition of distinctiveness for a new member of the putative family.[20]

---

[20] Such a finding by an examining attorney would not be binding on other examining attorneys, on the Board, or on opposing parties. *See In re Cordua Rests., Inc.,* 110 USPQ2d at 1233; *In re Nett Designs Inc.,* 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001); *In re*

### 3. Whether the evidence of record in this case establishes, that the applied-for mark has acquired distinctiveness by virtue of its membership in a recognized family of marks

In this case, Applicant has taken upon itself the burden of proving first, that its claimed family of "double word" marks has acquired distinctiveness, and second, that the public recognition of that family helps the subject "family member" mark, in turn, acquire distinctiveness. This is a substantial burden.

Mere ownership of a series of similar marks does not suffice to establish a family of marks. *Truescents LLC v. Ride Skin Care LLC,* 81 USPQ2d 1334, 1337-38 (TTAB 2006); *Sports Authority Michigan Inc. v. PC Authority Inc.,* 63 USPQ2d 1782, 1800 (TTAB 2001). In *Consolidated Foods Corp. v. Sherwood Medical Industries, Inc.,* 177 USPQ 279 (TTAB 1973), for example, the opposer, which owned over 45 registrations for marks such as CREAMSICLE, FUDGSICLE, and FRUITSICLE (a larger collection of registrations than Applicant has presented here) claimed to own a family of "SICLE" marks. In that case, the Board held that, "we are not persuaded on the record before us that opposer possesses a family of marks characterized by the term 'SICLE' that is recognized as such by the general public. … While the number of these registrations is impressive, … the registrations, per se, are manifestly incompetent to establish the extent of use of the registered marks, whether one or more of the registered marks have been promoted, advertised, used or displayed in any manner likely to cause an association or 'family' of marks…." *Id.* at 282. In this case, Applicant

---

*Litehouse,* 82 USPQ2d at 1474-75. A family of marks must be proven in every proceeding in which it is asserted. *McDonald's Corp. v. McSweet, LLC,* 112 USPQ2d 1268, 1276 (TTAB 2014).

has made of record its registrations of double word marks. While we presume the marks and registrations to be valid, the registrations alone do not demonstrate the extent to which customers have been exposed to the marks, or the extent to which customers have been exposed to the mark DEEP!DEEP! DISH PIZZA or perceive it as a source indicator.

To prove the existence of a family of marks, Applicant must show that its putative family (1) has a recognizable common characteristic, (2) that is distinctive, and (3) that has been promoted in such a way as to create "recognition among the purchasing public that the common characteristic is indicative of a common origin of the goods or services." *Wise F & I, LLC v. Allstate Ins. Co.,* 120 USPQ2d 1103, 1109 (TTAB 2016) (citing *Truescents,* 81 USPQ2d at 1337-38). Applicant fails to satisfy any of these three elements.

As to the first element, the common characteristic in word marks is typically a prefix, such as "Mc", or a suffix, such as "Я US". 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:61 (4th ed. 2016). Applicant points us to no authority for its claim that the common characteristic may consist of a structure—i.e., a double word mark. However, we agree that the concept of a "family" is not necessarily limited to prefixes and suffixes. The term "trademark" broadly embraces "any word, name, symbol, or device, or any combination thereof" that may be used to indicate the source of goods, 15 U.S.C. § 1127, and "[s]ince human beings might use as a 'symbol' or 'device' almost anything at all that is capable of carrying meaning, this language, read literally, is not restrictive." *Qualitex Co.* v. *Jacobson Products Co.,* 514 U.S. 159, 34 USPQ2d 1161, 1162 (1995) *quoted in Wal-Mart Stores Inc. v. Samara Bros. Inc.,*

15

529 U.S. 205, 54 USPQ2d 1065, 1067 (2000). The very breadth of possible trademarks, encompassing designs, trade dress, and even sounds, leaves open the possibility that the structure, pattern, or form of these marks could conceivably form a family. After all, the very recognition of an element as a prefix or a suffix bespeaks some recognition of structure, of whether the element is at the beginning or end of a word mark. In *Christian Broadcasting Network, Inc. v. ABS-CBN Int'l,* 84 USPQ2d 1560, 1566 (TTAB 2007), the Board found that "[e]ven if petitioner had established a family of **CBN** marks (*i.e.* CBN followed by another word such as CBN News, CBN Outreach, CBN Animation, etc.), respondent's mark **ABS-CBN** would not likely be viewed as a member of petitioner's CBN family of marks. Respondent's mark is *structured* differently. Rather than CBN followed by another word, respondent's mark is comprised of two sets of three letters—ABS prior to CBN." (Emphasis added.) Thus, we do not foreclose the theoretical possibility that a structure may satisfy the first required element in proving the existence of a family of marks: a common characteristic.

In this case, though, the structure consisting of a descriptive word and an exclamation point followed by the same word and another exclamation point is too abstract to constitute a common characteristic that could give rise to a family of similarly-structured marks. Recognizing a family of such marks would effectively grant Applicant an exclusive proprietary right to an unbounded variety of merely descriptive double word marks. Even if Applicant's rights were limited to pizza and pizza restaurants, acknowledging its claimed family of marks would still pave the way for it to enforce almost any descriptive word in the dictionary, so long as it

16

repeats. This would create, in our view, an unacceptable risk to competition. *See In re Abcor Dev. Corp.,* 588 F.2d 811, 200 USPQ 215, 217 (CCPA 1978) ("The major reasons for not protecting [descriptive] marks are: (1) to prevent the owner of a mark from inhibiting competition in the sale of particular goods; and (2) to maintain freedom of the public to use the language involved, thus avoiding the possibility of harassing infringement suits by the registrant against others who use the mark when advertising or describing their own products.") (citation omitted). Such a right would be analogous to a phantom mark. *See In re Int'l Flavors & Fragrances Inc.,* 183 F.3d 1361, 51 USPQ2d 1513, 1517-18 (Fed. Cir. 1999) ("phantom marks . . . encompass too many combinations and permutations to make a thorough and effective search possible."); *see also In re Primo Water Corp.,* 87 USPQ2d 1376 (TTAB 2008) (finding that a proposed mark placing text and graphic material on one side of a water bottle and an identical copy of the text and graphic material inverted on the other side of the bottle was an impermissible phantom mark).[21] *See generally* TMEP § 1214. Applicant's claimed family of marks structured as double words is thus far too abstract to satisfy the first element.[22]

As to the second element, distinctiveness, the marks in Applicant's claimed family do not repeat an element that is already recognized by consumers as source-indicating, such as "Mc." *In re Fantasia Dist.,* 120 USPQ2d at 1142. They repeat

---

[21] It also may well be "contrary to the accepted principles of trademark law" that prohibit viewing trademarks as rights in gross. *See Consol. Foods,* 177 USPQ at 282.

[22] We note, as well, that while most of the registered marks on which Applicant relies include repeated words followed by another, some are structured differently, and have the other word preceding the repeated word.

common descriptive words used in connection with pizzas and pizza restaurant services, words such as CRISPY!CRISPY!, BIG!BIG!, and PEPPERONI!PEPPERONI! This runs up against the well-settled principle that "a proprietary right cannot be acquired in a nonarbitrary term or a term that has been so commonly used in the trade that it cannot function as the distinguishing feature of any one party's mark." *Cambridge Filter Corp. v. Servodyne Corp.*, 189 USPQ 99, 103 (TTAB 1975). As noted above, repeating a word does not normally overcome its descriptive nature. Double word marks such as DEEP!DEEP!, consisting of repeated descriptive words punctuated by exclamation points, are more likely to be taken as intensifiers than as source-identifiers.[23] *See e.g., In re Litehouse,* 82 USPQ2d 1471 (CAESAR!CAESAR! merely descriptive for salad dressings). "'[N]ot every designation that is placed or used on or in connection with a product necessarily functions or is recognized as a trademark for said product; not every designation adopted with the intention that it perform a trademark function and even labeled as a trademark necessarily accomplishes that purpose. …'" *Am. Velcro, Inc. v. Charles Mayer Studios, Inc.*, 177 USPQ 149, 154 (TTAB 1973) *quoted in In re Fantasia Dist.,* 120 USPQ2d at 1138 (in most cases, a repeated pattern on a product serves a decorative purpose, and is not a source identifier). Hence, Applicant fails to satisfy the second required element, that the repeated words (which, as Applicant defines the family, would include descriptive and generic words) and exclamation points are necessarily distinctive.

---

[23] Examining Attorney's brief, 17 TTABVUE 12.

Finally, Applicant fails to satisfy the third element: that the marks containing the family feature have been used and promoted together in a manner sufficient to create public recognition. *See In re 3Com Corp.,* 56 USPQ2d 1060, 1062n.4 (TTAB 2000). According to Applicant, Little Caesars does not make its sales figures public, so it has not made those figures of record.[24] Nonetheless, Applicant points to industry sources reporting that Little Caesars has grown into the fourth largest pizza chain in the United States (behind Pizza Hut, Dominos, and Papa John's), with approximately 3,500 franchise locations and sales in 2012 of about $1.45 billion.[25] Little Caesars first used PIZZA!PIZZA! in commerce in 1980,[26] in conjunction with a campaign advertising two pizzas for one low price.[27] Over the intervening years, it states, it has used PIZZA!PIZZA! and its other double word marks at its restaurant locations and in its advertising via television commercials, radio ads, print ads, and on the Internet.[28] It has attached eight exhibits showing representative samples of its print advertising of double word marks together, such as the following:

---

[24] Applicant's brief, p. 4, 13 TTABVUE 9; Feb. 28, 2014 Response to Office Action, p. 9.

[25] "2012 Top 100 Pizza Chains" www.PizzaToday.com, 2/11/2014, Feb. 28, 2014 Response to Office Action, p. 25.

[26] Feb. 28, 2014 Response to Office Action, pp. 1-2. The registration certificate for PIZZA!PIZZA!, Reg. no. 1399730, indicates that its date of first use was September 1, 1980.

[27] A. Kirk, "History of Little Caesar's Pizza" www.ehow, 2/11/2014, Feb. 28, 2014 Response to Office Action, p. 16.

[28] Feb. 28, 2014 Response to Office Action, p. 3.



Applicant also adduced restaurant point-of-sale displays:

 

---

[29] Feb. 28, 2014 Response to Office Action, p. 96.

[30] Feb. 28, 2014 Response to Office Action, pp. 115, 150.

and print ads with coupons, containing the MEATSA!MEATSA!, SLICE!SLICE!, BABY PAN!PAN!, and BIG!BIG! marks together, e.g.:



[31]

The examples depicted above were culled from over sixty pages of similar exhibits evidencing use of the double word marks.[32] According to Applicant, "This evidence shows almost thirty years of advertising by Little Caesars of double word marks that has firmly fixed in the minds of consumers the connection and association between Applicant's family of marks and its goods and services. … The context of Little Caesars' family of marks is the lens through which the DEEP!DEEP! DISH PIZZA mark must be viewed…."[33]

---

[31] Feb. 28, 2014 Response to Office Action, p. 98.

[32] Feb. 28, 2014 Response to Office Action, pp. 94-165.

[33] Feb. 28, 2014 Response to Office Action, p. 3.

On April 1, 2013, Little Caesars also issued a news release, "Little Caesars Pizza Premieres New DEEP!DEEP! Dish Pizza."[34] That same day, the new product's rollout received coverage in The Huffington Post: "Little Caesars DEEP!DEEP! Dish Pizza, New Detroit-Style Pie, Available Nationally as Hot-N-Ready."[35] The next month, the product received a favorable online review: "Little Caesars has DEEP!DEEP! Dish Pizza hot and ready … for pizza-lovers to stop in and pick up on their way home, or order anytime for pickup. … I can honestly say that this pizza is one that we would have purchased even without Little Caesars providing us with one."[36] Applicant characterizes this as "evidence of consumers independently discussing the DEEP!DEEP! DISH PIZZA and clearly associating it with Applicant."[37] The new product was displayed in print ads, e.g.:



[38]

---

[34] www.prnewswire.com, April 1, 2013, Feb. 28, 2014 Response to Office Action, pp. 159-160.

[35] Kate Abbey-Lambertz, The Huffington Post, 4/1/2013, Feb. 28, 2014 Response to Office Action, p. 163.

[36] RitaReviews.net, May 11, 2013; Feb. 28, 2014 Response to Office Action, pp. 161-162.

[37] Applicant's brief, p. 12, 13 TTABVUE 17; Sept. 3, 2015 Response to Office Action, p. 1.

[38] Feb. 28, 2014 Response to Office Action, p. 156.

We have reviewed all of the record evidence, including evidence not expressly mentioned above.[39] In view of the broad and abstract nature of Applicant's claimed family, as well as the degree of descriptiveness of its proposed mark, we find the evidence insufficient to support a finding of acquired distinctiveness of the putative family of marks.

Nor do we find it sufficient to show acquired distinctiveness of the subject mark, DEEP!DEEP! DISH PIZZA. The figures that were provided, showing growth in the number of franchise restaurants over the decades and gross sales as of 2012, demonstrate the popularity of its products, not necessarily consumers' recognition of its double word marks as source indicators. *See, e.g., In re Bongrain Int'l (Am.) Corp.*, 894 F.2d 1316, 13 USPQ2d 1727, 1729 (Fed. Cir. 1990). Applicant's representative samples of advertising did not demonstrate its magnitude, geographic extent, duration, circulation or viewership. There is no evidence of the extent to which the press release or the Huffington Post article were circulated to the general public. And one food critic's review does not constitute "evidence of consumers independently discussing the DEEP!DEEP! DISH PIZZA and clearly associating it with Applicant,"

---

[39] Applicant submitted two exhibits listing hyperlinks to television advertisements for its double word marks in general and its DEEP!DEEP! DISH PIZZA mark in particular. February 28, 2014 Response to Office Action, exhibits 7 and 17, at pp. 93-94 and 164-165. With respect to exhibit seven, Applicant offers, "If the links are insufficient, applicant can provide the videos in compact disc format." pp. 3, 10. No disc has been submitted. Providing hyperlinks to Internet materials is insufficient to make such materials of record. *See In re Powermat Inc.,* 105 USPQ2d 1789, 1791 (TTAB 2013); *In re Planalytics,* 70 USPQ2d 1453, 1458 (TTAB 2004); TMEP § 710.01(b). We hasten to add that even if the advertisements had been properly introduced, they would not have changed the outcome.

as Applicant puts it.[40] It constitutes one online reviewer (with an indeterminate number of followers) reviewing a free pizza she received from Little Caesars.

Finally, we note that the exemplars Applicant provided always show the double words together with other marks, most notably Applicant's house mark, LITTLE CAESARS. Thus, it is impossible to gauge from this advertising whether and, if so, to what extent, these advertisements inured to the benefit of the double words used therein or to the other marks that appeared together with them. *See, e.g.*, *In re La. Fish Fry*, 116 USPQ2d at 1265-66 (advertising exemplars and expenditures to advertise LOUISIANA FISH FRY PRODUCTS unpersuasive to show acquired distinctiveness in the words FISH FRY PRODUCTS alone); *In re Soccer Sport Supply Co.*, 507 F.2d 1400, 184 USPQ 345, 348 (CCPA 1975) (advertising displaying the design at issue along with word marks lacked the "nexus" that would tie together use of the design and the public's perception of the design as an indicator of source); *In re Mogen David Wine Corp.*, 372 F.2d 539, 152 USPQ 593, 595 (CCPA 1967) ("As far as the record shows from the advertisement and promotional material and point of sale display, affiants never saw the decanter without the neck band or label or had called to their attention the allegedly unusual configuration of the decanter. We think it reasonable to assume, therefore, as did the board, that the affiants' association of the decanter with appellant was predicated upon the impression imparted by the mark MOGEN DAVID and other descriptive material appearing thereon rather than by any distinctive characteristic of the container per se.").

---

[40] Sept. 3, 2015 Response to Office Action, p. 1.

"The ultimate test in determining whether a designation has acquired distinctiveness is Applicant's success, rather than its efforts, in educating the public to associate the proposed mark with a single source." *Mini Melts,* 118 USPQ2d at 1480. More persuasive evidence than what Applicant has submitted would be necessary to show that its proposed mark has become distinctive for its goods. *Id.* at 1481; *see also In re Tires, Tires, Tires Inc.*, 94 USPQ2d at 1159; *Champion Int'l Corp. v. Plexowood, Inc.,* 191 USPQ 160, 162 (TTAB 1976) ("This purchaser recognition factor, the salient consideration necessary to achieve a 'family of marks', is noticeably lacking in this case"). All in all, the requisite showing has not been made.

## III. Conclusion

For the foregoing reasons, we agree with the Examining Attorney's determination that Applicant has failed to meet its burden of proving acquired distinctiveness of the applied-for mark.

**Decision**: The refusal to register Applicant's mark DEEP!DEEP! DISH PIZZA is affirmed.