# United States Court of Appeals for the Federal Circuit

---

**BRUCE S. SCHLAFLY, PHYLLIS SCHLAFLY REVOCABLE TRUST, SUCCESSOR-IN-INTEREST TO PHYLLIS SCHLAFLY,**
*Appellants*

**v.**

**SAINT LOUIS BREWERY, LLC,**
*Appellee*

---

2017-1468

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 91207224, 91207225.

---

Decided: November 26, 2018

---

ANDREW SCHLAFLY, Far Hills, NJ, argued for appellants.

MARK R. SOWERS, The Sowers Law Firm, LLC, St. Louis, MO, argued for appellee.

---

Before NEWMAN, MAYER, and STOLL, *Circuit Judges.*

NEWMAN, *Circuit Judge.*

The Saint Louis Brewery ("SLB") is a craft brewery that was founded in 1989 by Thomas Schlafly and Daniel Kopman in St. Louis, Missouri. The brewery began selling beer with the SCHLAFLY logo in 1991, and asserts that it "has continuously sold beer under its SCHLAFLY trademark" ever since. Appellee's Br. 2. In 2011 SLB applied for trademark registration for the word mark "SCHLAFLY" for use with various types of beer. The application drew opposition from two relatives of Thomas Schlafly ("the Opposers"): Phyllis Schlafly, Thomas's aunt, and Bruce Schlafly. The Trademark Trial and Appeal Board ("TTAB" or "the Board") denied the opposition.

The Opposers appeal, arguing that the TTAB did not recognize that the mark was "primarily merely a surname," and that the TTAB improperly accepted that the mark has acquired secondary meaning although the applicant did not provide survey evidence. The Opposers also claim violation of their First Amendment, Fifth Amendment, and Due Process rights and protections.

We conclude that the mark "SCHLAFLY" for beer meets the requirements for registration, and affirm the decision of the TTAB.

## BACKGROUND

### A

### *The St. Louis Brewery*

SLB states that it sells sixty types of beer, all with the SCHLAFLY mark, in fifteen states and the District of Columbia, through thirty wholesalers, 14,000 retail locations, and several national restaurant chains. Appellee's Br. 4–6. From 2009 to 2014, SLB sold more than seventy-five million units of SCHLAFLY beer, not including sales made at its restaurants; this included 56.3 million bottles and cans and 18.5 million draft servings of SCHLAFLY beer. Appellee's Br. 6.

SLB states that it has made substantial investments in marketing the SCHLAFLY brand, and that all labels for SCHLAFLY beer prominently feature the SCHLAFLY mark. It claims that it has spent $1.1 million in advertising over the last five years and has featured the SCHLAFLY mark in radio, print publications, billboards, social media, and at over 500 events. Appellee's Br. 7. SCHLAFLY beer has been mentioned in print media, including USA Today, J.A. 347–52, The Atlantic, J.A. 369–70, The Washington Post, J.A. 375–77, and The Wall Street Journal, J.A. 372–73.

SLB already has trademark registrations for two other logo marks that include the SCHLAFLY name. The application here seeks to register the SCHLAFLY word mark in standard character format for "[b]eer, ale and lager; [b]eer, ale and porter; [b]eer, ale, lager, stout and porter; [b]eers; [b]lack beer; [b]rewed malt-based alcoholic beverage in the nature of a beer; [and] [c]offee-flavored beer." J.A. 456. To support its application, SLB submitted a Section 2(f) declaration, stating that the SCHLAFLY mark had acquired distinctiveness due to substantially exclusive and continuous use with its goods for at least five years, immediately prior to the submission of the application. J.A. 457.

## B

### *The Opposers*

The Opposers filed separate oppositions to the registration, and the oppositions were consolidated by the Board and presented on the same record and briefs.

Opposer Phyllis Schlafly, now deceased, was a well-known activist who lived in Missouri. Her brief refers to her as a "conservative icon," and it is not disputed that she was a known public figure. The Opposers argue that, due to Phyllis's role in political and public discourse, "the surname Schlafly is primarily associated in the minds of

the public with Phyllis Schlafly and the traditional values that she represented." Appellants' Br. 5.

Opposer Dr. Bruce Schlafly is a physician in Sappington, Missouri, and has used his name in his medical practice since 1986. Appellants' Br. 7–8. The Opposers argue that, if granted, the SCHLAFLY mark will have "[a] negative connotation due to complications with . . . [d]runk driving [and] intoxication leading to injuries." J.A. 45 (Tr. 15:10–14).

## C

### *The Board Decision*

The TTAB ruled in favor of SLB and accordingly entitled the SCHLAFLY mark to registration on the Principal Register.[1] The allowance was on the basis of acquired distinctiveness under Section 2(f), the Board found that the mark had acquired secondary meaning. The Board explained that it need not decide whether the mark was primarily a surname, because the mark had acquired distinctiveness. The Board relied on the long continuous use of the mark, the geographic scope of use of the mark, the variety of products with the mark in commerce, the prominent placement of the mark on SLB's products, the large sales volume of SCHLAFLY beer, the marketing types and expenditures of SLB, the total revenue for SCHLAFLY marked products, SLB's significant ranking among craft brewers in the United States, the awards won by SCHLAFLY beer, and media and other reports on SCHLAFLY beer products. TTAB Op. at *5–8.

---

[1]  *Dr. Bruce Schlafly v. Saint Louis Brewery*, Opposition No. 91207224, 2016 WL 4474865 (T.T.A.B. Aug. 2, 2016) ("TTAB Op.").

The Board stated that it "need not address whether Applicant's mark actually *is* primarily merely a surname because, even if it is, the Trademark Act explicitly provides that such a mark may be registered if it has acquired distinctiveness." TTAB Op. at *4 (citing 15 U.S.C. § 1052(f)). It further stated, "[i]nasmuch as there is no evidence of market proximity between Applicant and the activities of Phyllis Schlafly, there is no reason to believe that those activities have interfered with the ability of customers to associate Applicant's mark with Applicant's goods." *Id.* at *9.

The Board rejected the Opposers' argument that SLB was required to submit consumer surveys as evidence of secondary meaning. *Id.* at *8. The Board found the evidence presented sufficient to show that the mark had acquired distinctiveness in commerce, stating that the Board could not "escape the conclusion that Applicant's mark and goods have developed market recognition among a segment of the relevant public." *Id.* The Board then concluded that the applicant had established "a substantial business and has vigorously promoted its beer under the mark SCHLAFLY in such a way as to have created, among its customers, an association between its mark and its goods." *Id.* at *9.

After the TTAB decision, the Opposers requested reconsideration on the ground that it was improper to permit registration based on acquired distinctiveness without a survey showing secondary meaning. The Board denied reconsideration, stating that there was more than enough evidence to support a finding of secondary meaning, and, "[t]o be blunt, this was not a 'close call.'" Opinion on Request for Reconsideration, Opposition No. 91207225, at *3.

## DISCUSSION

The question of acquired distinctiveness of a mark is a question of fact, and the Boards findings are reviewed for

support by substantial evidence. *See Hoover Co. v. Royal Appliance Mfg. Co.*, 238 F.3d 1357, 1360 (Fed. Cir. 2001); *In re La. Fish Fry Prods., Ltd.*, 797 F.3d 1332, 1335 (Fed. Cir. 2015). [W]e determine whether, on the entirety of the record, there was substantial evidence to support the determination," *In re Hotels.com, LP*, 573 F.3d 1300, 1302 (Fed. Cir. 2007), which requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Consol. Edison Co. of N.Y. v. N.L.R.B*, 305 U.S. 197, 229, 59 S.Ct. 206 (1938).

The question of whether the Board applied the correct legal standard to the facts is a question of law. *Princeton Vanguard, LLC v. Frito-Lay N. Am., Inc.*, 786 F.3d 960, 964 (Fed. Cir. 2015) (citing In re Dial–A–Mattress Operating Corp., 240 F.3d 1341, 1345 (Fed. Cir. 2001)). We review the Board's legal determinations de novo and without deference. *Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1265 (Fed. Cir. 2002).

## I

### *Acquired Distinctiveness of the Schlafly Mark*

The Lanham Act in Section 2(f) permits registration of marks that have acquired distinctiveness by use in commerce. The statute provides, "[e]xcept as expressly excluded in subsections (a), (b), (c), (d), (e)(3), and (e)(5) of this section, nothing in this chapter shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce." 15 U.S.C. § 1052(f). After reviewing SLB's evidence, the Board concluded that SLB had presented more than sufficient evidence to show that the SCHLAFLY mark had acquired distinctiveness.

The statute also states that "[t]he Director may accept as prima facie evidence that the mark has become distinctive, as used on or in connection with the applicant's goods in commerce, proof of substantially exclusive and

continuous use thereof as a mark by the applicant in commerce for the five years before the date on which the claim of distinctiveness is made." *Id.* Section 2.41 of Title 37 of the Code of Federal Regulations in relevant part, provides that the following types of evidence may be considered to show secondary meaning:

> **(1) *Ownership of prior registration(s).*** In appropriate cases, ownership of one or more active prior registrations on the Principal Register or under the Trademark Act of 1905 of the same mark may be accepted as prima facie evidence of distinctiveness if the goods or services are sufficiently similar to the goods or services in the application; however, further evidence may be required.

> **(2) *Five years substantially exclusive and continuous use in commerce.*** In appropriate cases, if a trademark or service mark is said to have become distinctive of the applicant's goods or services by reason of the applicant's substantially exclusive and continuous use of the mark in commerce for the five years before the date on which the claim of distinctiveness is made, a showing by way of verified statements in the application may be accepted as prima facie evidence of distinctiveness; however, further evidence may be required.

> **(3) *Other evidence.*** In appropriate cases, where the applicant claims that a mark has become distinctive in commerce of the applicant's goods or services, the applicant may, in support of registrability, submit with the application, or in response to a request for evidence or to a refusal to register, verified statements, depositions, or other appropriate evidence showing duration, extent, and nature of the use in commerce and advertising expenditures in connection therewith (identi-

fying types of media and attaching typical advertisements), and verified statements, letters or statements from the trade or public, or both, or other appropriate evidence of distinctiveness.

37 C.F.R. § 2.41(a).

SLB presented all three types of evidence to the Board, and the Board evaluated fifteen different forms of evidence in reaching its conclusion. These included evidence of the commercial success of SCHLAFLY-branded beer through sales at restaurants and large retailers, evidence of sales of over seventy-five million servings of SCHLAFLY-branded beer between 2009 and 2014, and media coverage in local and national media outlets, including USA Today, The Washington Post, and The Wall Street Journal. Appellee's Br. 28–31. In addition, SLB demonstrated more than twenty-five years of continuous use of the SCHLAFLY mark. The Board also found direct evidence, in the form of press notices which were "direct evidence of third-party perceptions of the mark." Opinion on Request for Reconsideration at *3 (J.A. 3). The Board and courts have recognized that both direct and circumstantial evidence may show secondary meaning. *See Yamaha Intern. Corp. v. Hoshino Gakki Co., Ltd.*, 840 F.2d 1572, 1583, (Fed. Cir. 1988) ("[A]bsence of consumer surveys need not preclude a finding of acquired distinctiveness. . . . To prove distinctiveness under 15 U.S.C. § 1052(f), applicants may submit any appropriate evidence tending to show that the mark distinguishes [applicant's] goods.") (internal quotation marks omitted).[2]

---

[2]     *See also Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*, 270 F.3d 298, 315, (6th Cir. 2001) ("[C]onsumer surveys, while helpful, are not a prerequi-

The Opposers argue that SCHLAFLY is significant to the public primarily as the surname of Phyllis Schlafly. Citing *In re Etablissements Darty et Fils*, 759 F.2d 15, 17 (Fed. Cir. 1985), the Opposers urge the court to adopt a new test that they call a "change in significance" test, whereby a surname cannot be registered as a trademark without showing a change in significance to the public, from a surname to an identifying mark for specified goods. Appellants' Br. 12–13. In *Darty et Fils*, however, even though, the primary question was whether "Darty" was primarily merely a surname, the Board had correctly held that the Opposers' "provides no support for their contention." Opinion on Request for Reconsideration at *2 (J.A. 2). Here, in contrast, the examiner and the Board found that the SCHLAFLY mark had acquired secondary meaning for use with beer products.

The Opposers further argue that the Board refused to determine whether the mark was "primarily merely a surname," pointing out that Section 1052(e)(4) prohibits the registration of marks that are primarily merely a surname. The Board, however, correctly stated that the trademark statute provides that words that are primarily merely a surname can be registered trademarks if they have acquired secondary meaning in trademark use. Section 1052 of Title 15 of the United States Code, in relevant part provides: "[e]xcept as expressly excluded in subsections (a), (b), (c), (d), (e)(3), and (e)(5) of this section, nothing in this chapter shall prevent the registration of a mark used by the applicant which has become distinctive

---

site to establishing secondary meaning."); *see* 2 McCarthy on Trademarks and Unfair Competition § 15:30 ("Survey data is direct evidence of secondary meaning. But survey evidence is not required. Secondary meaning can be, and most often is, proven by circumstantial evidence.").

of the applicant's goods in commerce." 15 U.S.C. § 1052(f).[3] The statutory interpretive canon of *expressio unius est exclusio alterius*, provides that "expressing one item of [an] associated group or series excludes another left unmentioned." *N.L.R.B. v. SW Gen., Inc.*, 137 S.Ct. 929, 933 (2017)(quoting *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 80 (2002).

No law or precedent suggests that surnames cannot be registered as trademarks if they have acquired distinctiveness in trademark use. Because the Board found that the SCHLAFLY mark for beers had acquired secondary meaning, Section 1052(e)(4) did not bar the registration.

## II

### *The Constitutional Claims*

The Opposers argue that the registration violates the First and Fifth Amendments of the Constitution. As to the First Amendment claim, the Opposers do not adequately explain how registration improperly impinges on their First Amendment rights. The Fifth Amendment claim likewise fails, as trademark registration is not a taking for government use. *See Acceptance Ins. Cos., Inc. v. United States,* 583 F.3d 849, 854 (Fed. Cir. 2009) (explaining that the court must first "determine[] whether the claimant has identified a cognizable Fifth Amendment

---

[3] *See Barnhart v. Peabody Coal Co.,* 537 U.S. 149, 168 (2003)("[T]he canon *expressio unius est exclusion alterius* does not apply to every statutory listing or grouping; it has force only when the items expressed are members of an 'associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence." (quoting *United States v. Vonn,* 535 U.S. 55, 65, 122 S.Ct. 1043 (2002))).

property interest that is asserted to be the subject of the taking").

The Opposers also claim that their Due Process rights were violated when the Board recognized secondary meaning in the SCHLAFLY mark without proof of a change in public perception. However, the trademark opposition procedure, of which they have availed themselves, provides appropriate process of law.

## CONCLUSION

The decision of the Trademark Trial and Appeal Board is affirmed.

## AFFIRMED