This Opinion Is a
Precedent of the TTAB

Mailed: July 19, 2019

UNITED STATES PATENT AND TRADEMARK OFFICE

____

Trademark Trial and Appeal Board

____

*In re National Association of Veterinary Technicians in America, Inc.*

____

Serial No. 87171093

____

Anne E. Keenan-Yates of FisherBroyles LLP,
    for National Association of Veterinary Technicians in America, Inc.

Michael L. Engel, Trademark Examining Attorney, Law Office 107,
    J. Leslie Bishop, Managing Attorney.

____

Before Kuhlke, Bergsman, and Lynch,
    Administrative Trademark Judges.

Opinion by Lynch, Administrative Trademark Judge:

I.   Background

National Association of Veterinary Technicians in America, Inc. ("Applicant") seeks registration on the Principal Register of the proposed certification mark VETERINARY TECHNICIAN SPECIALIST in standard characters for "veterinary

medicine services" in Class B.[1] The Trademark Act defines a "certification mark" as "any word, name, symbol, or device, or any combination thereof [used] to certify regional or other origin, material, mode of manufacture, quality, accuracy, or other characteristics of [a] person's goods or services . . . ." 15 U.S.C. § 1127. The application includes the following certification statement: "The certification mark, as used or intended to be used by persons authorized by the certifier, certifies that an individual has completed the required curriculum of a defined body of veterinary technology knowledge pertinent to that particular specialty."

The Examining Attorney refused registration of Applicant's mark under Section 2(e)(1) of the Trademark Act, 15 U.S.C. § 1052(e)(1), as merely descriptive of the identified services, and included an advisory that the mark appears to be generic.[2] Certification marks are subject to the same statutory bars to registration as other marks, including mere descriptiveness under Section 2(e)(1) of the Trademark Act. *See, e.g., In re Council on Certification of Nurse Anesthetists*, 85 USPQ2d 1403 (TTAB 2007) (affirming refusal to register merely descriptive certification mark on the ground that it had not acquired distinctiveness); *In re Nat'l Ass'n of Legal Secretaries (Int'l)*, 221 USPQ 50, 52 (TTAB 1983) (certification marks subject to "the Section 2 qualifications and bans, including those of Section 2(e)").

---

[1] Application Serial No. 87171093 has a filing date of September 14, 2016, and is based on alleged use in commerce under Trademark Act Section 1(a), 15 U.S.C. § 1051(a).

[2] TSDR December 30, 2016 Office Action at 1.

Applicant argued against the refusal, but also claimed acquired distinctiveness under Section 2(f), 15 U.S.C. § 1052(f), in the alternative.[3] Applicant relied in part on a supporting declaration by Julie Legred, Applicant's Executive Director, stating that there has been "substantially exclusive and continuous use and control of the Mark in commerce by authorized parties for at least the five years immediately before the date of this statement (since 1995)."[4] Applicant also attached an article from the April 1997 issue of DVM Newsmagazine and a publication titled Lifeline, Official Newsletter of Veterinary Emergency and Critical Care Society (March 1996), "as further evidence supporting Applicant's exclusive use of the Mark," as well as screenshots of the websites of third-party veterinary academies that conduct educational programs for those seeking certification as a VETERINARY TECHNICIAN SPECIALIST.[5]

The Examining Attorney characterized Applicant's mark as highly descriptive and deemed the Section 2(f) claim insufficient, eventually making the Section 2(e)(1) refusal and the rejection of the Section 2(f) claim final. Applicant requested reconsideration[6] and appealed.[7] The Examining Attorney denied the request for reconsideration.[8]

---

[3] TSDR June 30, 2017 Response to Office Action at 6-7.

[4] *Id.* at 58 (Legred Declaration).

[5] *Id.* at 59-116.

[6] 4 TTABVUE.

[7] 1 TTABVUE.

[8] 5 TTABVUE.

Applicant's Brief on appeal includes arguments against a genericness refusal,[9] perhaps because the Examining Attorney gave a genericness advisory and at times referred to the wording in Applicant's mark as generic.[10] However, the Examining Attorney only refused the mark as merely descriptive,[11] and never added a genericness refusal, even after Applicant claimed acquired distinctiveness.[12] The Examining Attorney's Brief confirms that the "sole issues" on appeal are descriptiveness and acquired distinctiveness.[13] Thus, genericness is not at issue in this appeal.

We affirm the refusal to register the mark as merely descriptive and lacking acquired distinctiveness for the reasons discussed below.

## II.  Descriptiveness

Section 2(e)(1) of the Trademark Act precludes registration of "a mark which, (1) when used on or in connection with the goods [or services] of the applicant is merely descriptive . . . of them." 15 U.S.C. § 1052(e)(1). A term is merely descriptive

---

[9] 7 TTABVUE 5-8 (Applicant's Brief).

[10] *E.g.,* 5 TTABVUE 3; 9 TTABVUE 6; *see also* TRADEMARK MANUAL OF EXAMINING PROCEDURE (TMEP) § 1209.02(a) (Oct. 2018) (directing examining attorneys initially to issue only a descriptiveness refusal, not a genericness refusal, unless the applicant asserts acquired distinctiveness, but allowing for inclusion of an advisory "statement that the subject matter appears to be a generic name").

[11] Advisory statements are not refusals subject to appeal. *In re Harley*, 119 USPQ2d 1755, 1757 (TTAB 2016); *see also In re Peace Love World Live, LLC,* 127 USPQ2d 1400, 1403-04 (TTAB 2018).

[12] *See* TMEP § 1209.02(a)(ii) ("If the applicant responds to a §2(e)(1) descriptiveness refusal by amending its application to assert acquired distinctiveness," and the examining attorney considers the mark generic, "the examining attorney must issue a new nonfinal action refusing registration" as generic.).

[13] 9 TTABVUE 4 (Examining Attorney's Brief).

within the meaning of the statute "if it immediately conveys knowledge of a quality, feature, function, or characteristic of the goods or services with which it is used." *In re Chamber of Commerce of the U.S.*, 675 F.3d 1297, 102 USPQ2d 1217, 1219 (Fed. Cir. 2012) (quoting *In re Bayer AG*, 488 F.3d 960, 82 USPQ2d 1828, 1831 (Fed. Cir. 2007)); *see also In re TriVita, Inc.*, 783 F.3d 872, 114 USPQ2d 1574, 1575 (Fed. Cir. 2015). In the case of a certification mark, the identified goods or services are those provided by the certified users. *See Council on Certification of Nurse Anesthetists*, 85 USPQ2d at 1411 (considering whether the certification mark "refer[s] to anesthesia services rendered and administered by certified registered nurse anesthetists"). Descriptiveness must be assessed "in relation to the [services] for which registration is sought, the context in which it is being used, and the possible significance that the term would have to the average purchaser of the [services] because of the manner of its use or intended use." *Bayer AG*, 82 USPQ2d at 1831 (citing *In re Abcor Dev.*, 588 F.2d 811, 200 USPQ 215, 218 (CCPA 1978)). Here, the consumers of "veterinary medicine services" include people seeking medical care for animals (e.g., pet owners, zoos, farmers) and veterinarians seeking veterinary technicians.[14]

---

[14] *See* Office Action dated Dec. 30, 2016, TSDR at 2 (veterinary technicians provide medical care for animals); Response to Office Action dated June 30, 2017, TSDR at 68-69 (veterinary technician specialists "provide your pet with exceptional anesthetic care"; "Anesthesia and Your Pet" video targeted to pet owners); Office Action dated Aug. 2, 2017, TSDR at 2 (job posting states that veterinary technicians assist veterinarians by "preparing animals for surgery, restraining pets" and "monitor[ing] animal health"); TSDR at 9 (job posting for veterinary technician states that they "evaluate and treat animals"); Office Action dated Mar. 3, 2018, TSDR at 41-42 (PetMD.com webpage targeted to pet owners, "When you drop your pet off at the veterinary hospital, have you ever thought about who besides the veterinarians is involved in their care? The answer to that question is the veterinary technician").

With a mark such as VETERINARY TECHNICIAN SPECIALIST, we may consider the meaning of the components, and then determine whether the mark as a whole is merely descriptive. *DuoProSS Meditech Corp. v. Inviro Med. Devices Ltd.*, 695 F.3d 1247, 103 USPQ2d 1753, 1758 (Fed. Cir. 2012). If the components VETERINARY TECHNICIAN and SPECIALIST are each individually merely descriptive of the services, we assess whether their combination in "Applicant's mark 'conveys any distinctive source-identifying impression contrary to the descriptiveness of the individual parts.'" *In re Fat Boys Water Sports LLC*, 118 USPQ2d 1511, 1515-16 (TTAB 2016) (quoting *In re Oppedahl & Larson LLP*, 373 F.3d 1171, 71 USPQ2d 1370, 1372 (Fed. Cir. 2003)). If each component "retains its merely descriptive significance in relation to the [services], the combination results in a composite that is itself merely descriptive." *Fat Boys*, 118 USPQ2d at 1516 (citing *In re Tower Tech., Inc.,* 64 USPQ2d 1314, 1317-18 (TTAB 2002)).

According to Applicant's own explanation in its Brief, "Applicant's Mark identifies a level of qualification achieved by **veterinary technicians** completing defined criteria and standards certified by Applicant" (emphasis added).[15] As Applicant's certification statement in the application indicates, the criteria and standards are "pertinent to [a] particular **specialty**" (emphasis added).

The record in this case includes ample evidence of the descriptiveness of VETERINARY TECHNICIAN in the context of the veterinary medicine services recited by Applicant because a "veterinary technician" is the recognized name of a

---

[15] 7 TTABVUE 6 (Applicant's Brief).

type of professional who participates in providing such services. Applicant's own promotional material repeatedly refers to "veterinary technicians" in a descriptive or generic way, for example, stating that "Veterinary Technician Specialists (VTS) are expert level veterinary technicians,"[16] and referring to the opportunity "for newly credentialed rehabilitation veterinary technicians wishing to learn more about the specialty field."[17] In the background information about its history, Applicant's material discusses the objective "to further encourage specialization of veterinary technicians in the field."[18] The nature of Applicant's use of "veterinary technician" shows that the term is a common name for a type of provider of veterinary medicine services.

Third parties in the industry also use "veterinary technician" descriptively or generically. For example:

> The Pima Medical Institute website offers a veterinary technician program, explaining that "[v]eterinary technicians are animal nurses.... As a veterinary technician, you will typically work under the supervision of a licensed veterinarian doing clinical work. This includes tasks such as performing various medical tests, and treating animals with medical conditions and diseases."[19]

> The iHireVeterinary website offers a page to "Search Veterinary Technician Jobs," noting that "Veterinary technicians observe and monitor animal health, collect samples for analysis, run laboratory tests, and continually update patient records."[20] The site includes postings by

---

[16] TSDR February 2, 2018 Response to Office Action at 6.

[17] *Id.* at 7.

[18] *Id.* at 6.

[19] TSDR December 30, 2016 Office Action at 2 (pmi.edu).

[20] TSDR August 2, 2017 Office Action at 2 (ihireveterinary.com).

> several individual businesses seeking "veterinary technicians,"[21] and offers "Veterinary Technician Related Career Advice Articles."[22]
>
> The Monster job search website offers a "Veterinary Technician" filter to refine a job search, and gives a "Veterinary Technician Job Overview" explaining that "The role of the veterinary technician is similar to that of a registered nurse in a doctor's office."[23] The site includes recruitment notices for various "veterinary technician" job openings.[24]

This third-party evidence also supports the descriptiveness refusal.

Turning to SPECIALIST, the term is defined as "one who specializes in a particular occupation, practice, or branch of learning."[25] As noted above, Applicant's own certification statement and promotional materials use "specialty" and "specialization" in a descriptive or generic manner in connection with the relevant services.[26] Applicant's certified users also make similar statements, such as:

> The Academy of Laboratory Animal Veterinary Technicians and Nurses' materials state that its mission is, *inter alia*, "[t]o promote excellence by specialization in veterinary technology/nursing in the distinct field of Laboratory Animal Medicine…."[27]

---

[21] *Id.* at 2-4.

[22] *Id.* at 8.

[23] TSDR August 2, 2017 Office Action at 9 (monster.com).

[24] *Id.* at 9-12.

[25] *See* TSDR December 30, 2016 Office Action at 44 (merriam-webster.com). This definition appears to be embedded in a search result, and previously was not submitted as a screenshot directly from the Merriam-Webster website. For clarity, we grant the Examining Attorney's request that we take judicial notice of the same definition as shown directly from merriam-webster.com. 9 TTABVUE 13.

[26] February 2, 2018 Response to Office Action at 6-7.

[27] *Id.* at 8.

> One certified user touted its provisional approval by Applicant, stating "[w]e are pleased to become the eleventh veterinary technician specialty recognized…."[28]
>
> Another certified user announced itself as "a provisionally approved specialty" for "[v]eterinary technicians who successfully meet the credential requirements and pass the AVZMT examination."[29]
>
> Another certified user describes how it "petitioned [Applicant's committee] for recognition as a certifying body of veterinary technician specialists in anesthesia. The announcement includes background about the development of a "process by which certification of veterinary technicians as specialists in anesthesia" and support received from another "veterinary technician specialty group" previously recognized by Applicant.[30]
>
> The Academy of Veterinary Surgical Technicians states that it seeks "to increase the competence of those who perform specialty duties in the field of veterinary surgery."[31]

The Examining Attorney also introduced third-party registrations into the record that include disclaimers of SPECIALIST in the context of medical (and other) services, including several certification mark registrations.[32] Most of these registrations with disclaimers of SPECIALIST are on the Supplemental Register, such that the disclaimers reflect the treatment of SPECIALIST as a generic term. *See* TMEP § 1213.03(a) ("If a mark is comprised in part of matter that, as applied to the goods or services, is generic or does not function as a mark, the matter must be

---

[28] TSDR February 2, 2018 Response to Office Action at 11.

[29] *Id.* at 15.

[30] *Id.* at 16 (avtaa-vts.org).

[31] TSDR June 30, 2017 Response to Office Action at 108.

[32] TSDR December 30, 2016 Office Action at 5-43.

disclaimed to permit registration on the Principal Register (including registration under §2(f) of the Act) or on the Supplemental Register."). Applicant countered with numerous third-party registrations of marks that contain SPECIALIST, including those for medical services, but do not have disclaimers of SPECIALIST.[33] However, they mostly are consistent with SPECIALIST being considered a descriptive term, as 21 of the 25 registrations issued under Section 2(f), based on acquired distinctiveness.

Thus, the record shows that in this context, the term SPECIALIST describes or refers to a person who specializes in a particular type of veterinary medicine. Like the component VERTERINARY TECHNICIAN, the component SPECIALIST on its own is not inherently distinctive for veterinary medicine services.

When a mark combines two descriptive terms, such as VETERINARY TECHNICIAN and SPECIALIST, the descriptiveness analysis turns on whether the combination of terms evokes a new and different commercial impression. We find that the combination in this case does not. The terms retain their ordinary meanings, and when combined, the entire proposed mark VETERINARY TECHNICIAN SPECIALIST refers to a veterinary technician who has become a specialist in a particular field of veterinary medicine.[34] This is further confirmed by a DVM Newsmagazine article that discusses Applicant and refers to the development of

---

[33] TSDR June 30, 2017 Response to Office Action at 8-57.

[34] Each of these terms is used in the industry to refer to those who practice veterinary medicine. "Our society is better served if … highly descriptive or generic terms remain available for use among competitors." *In re Water Gremlin Co.*, 635 F.2d 841, 208 USPQ 89, 91 (CCPA 1980) (footnote omitted).

"specialty status for veterinary technicians."[35] Where, as here, the combination retains the descriptive significance of the individual parts, the mark as a whole is merely descriptive. *In re Petroglyph Games Inc.*, 91 USPQ2d 1332, 1337 (TTAB 2009) (BATTLECAM merely descriptive for computer game software); *see also In re Phoseon Tech., Inc.*, 103 USPQ2d 1822, 1823 (TTAB 2012) (holding SEMICONDUCTOR LIGHT MATRIX merely descriptive of light and UV curing systems composed primarily of light-emitting diodes for industrial and commercial applications).

Overall, the evidence shows that to consumers of veterinary medicine services, VETERINARY TECHNICIAN SPECIALIST immediately conveys knowledge of a significant feature of the services, namely, that they are provided by a veterinary technician who specializes in a type of veterinary medicine. Given the nature and volume of evidence, we find Applicant's mark is not only merely descriptive of the identified services but highly descriptive as well. *See Royal Crown Co. v. Coca-Cola Co.*, 892 F.3d 1358, 127 USPQ2d 1041, 1045 (Fed. Cir. 2018) (instructing Board to first determine whether a proposed mark is highly descriptive rather than merely descriptive before assessing acquired distinctiveness).

## III. Acquired Distinctiveness

Descriptive marks may be registered on the Principal Register under Trademark Act Section 2(f) with a showing of acquired distinctiveness. 15 U.S.C. § 1052(f).[36] We

---

[35] TSDR June 30, 2017 Response to Office Action at 125.

[36] The statute also provides that the USPTO "may accept as prima facie evidence … proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the five years before the date on which the claim of distinctiveness is made." 15 U.S.C. § 1052(f).

determine whether Applicant's asserted mark has acquired distinctiveness based on the entire record, keeping in mind that "[t]he applicant … bears the burden of proving acquired distinctiveness." *In re La. Fish Fry Prods., Ltd.*, 797 F.3d 1332, 116 USPQ2d 1262, 1264 (Fed. Cir. 2015) (citation omitted).

To establish secondary meaning, or acquired distinctiveness for certification marks, the focus of the evidentiary showing differs from that for trademarks because certification marks indicate that goods or services provided by persons other than the mark owner adhere to specified standards set by the mark owner, whereas trademarks indicate the source of the goods or services. *See* Section 45 of the Trademark Act, 15 U.S.C. 1127 (defining "trademark" and "certification mark"); *see also* TMEP §1306.01(b) ("[T]he purpose of a certification mark is to inform purchasers that the goods or services of a person possess certain characteristics or meet certain qualifications or standards established by another person. A certification mark does not indicate origin in a single commercial or proprietary source the way a trademark or service mark does"). The focus for certification marks is on whether the evidence shows that in the minds of consumers of the applied-for goods or services, the primary significance of the designation is to indicate certification of the goods or services, i.e., that the goods or services meets certain standards set by the applicant. "[W]hen an applicant seeks registration of a certification mark, it is the use by persons other than the owner of the mark, subject to the owner's control, which is the primary consideration in determining how members of the relevant public will perceive the mark." *Council on Certification of Nurse Anesthetists*, 85 USPQ2d at 1406.

The types of evidence to be assessed and weighed in determining acquired distinctiveness of a certification mark are for the most part the same as those for trademarks and include: (1) actual purchasers' association of the mark with indicating certification; (2) length, degree, and exclusivity of use; (3) amount and manner of advertising; (4) amount of sales and number of customers; (5) intentional copying; and (6) unsolicited media coverage. *See Converse, Inc. v. Int'l Trade Comm'n*, 907 F.3d 1361, 128 USPQ2d 1538, 1546 (Fed. Cir. 2018). We weigh all of the factors for which there is evidence in the record in this case to determine the existence of secondary meaning. *Id.*

Applicant bears a high evidentiary burden for acquired distinctiveness because Applicant's proposed mark is highly descriptive. *See, e.g., Royal Crown*, 127 USPQ2d at 1045 (citing *In re Steelbuilding.com,* 415 F.3d 1293, 75 USPQ 1420, 1424 (Fed. Cir. 2005) ("[T]he applicant's burden of showing acquired distinctiveness increases with the level of descriptiveness; a more descriptive term requires more evidence of secondary meaning.")); *Council on Certification of Nurse Anesthetists*, 85 USPQ2d at 1415 (initialism CNRA for "Certified Registered Nurse Anesthetist" found to be highly descriptive, increasing "the evidentiary burden on the user to establish acquired distinctiveness"). With this backdrop, we consider Applicant's Section 2(f) claim.

After a careful review of the record, we find that Applicant's evidence does not show that users of veterinary medicine services have come to recognize the applied-for mark as indicating that the person performing the services has met certain

standards set by Applicant (i.e., that the person "has completed the required curriculum of a defined body of veterinary technology knowledge pertinent to that particular specialty") in connection with the services. Applicant's use since 1995, despite appearing to have been exclusive use, the existence of 16 certified users,[37] and examples of their webpages or promotional materials that refer to the mark do not convince us otherwise. *See, e.g., Council on Certification of Nurse Anesthetists*, 85 USPQ2d at 1414-15 (although there was no evidence of third-party use of the same or similar highly descriptive designation, nearly 50 years of use deemed insufficient to establish acquired distinctiveness where the applicant failed to establish its recognition by consumers as a certification mark); *In re Kalmbach Publ'g Co.*, 14 USPQ2d 1490, 1492 (TTAB 1989) (deeming Section 2(f) claim with more than 10 years of use insufficient for a highly descriptive mark "without specific evidence of the extent of the mark's exposure to the purchasing public and of the purchasers' perception of the asserted mark"); *In re Synergistics Research Corp.*, 218 USPQ 165, 167 (TTAB 1983) ("we have consistently held that a declaration or affidavit of continuous and exclusive use as a mark for an extended period of years is insufficient in and of itself to support registrability under Section 2(f) of the Trademark Act where the term sought to be registered is highly descriptive in character"). The existence of

---

[37] Applicant certifies veterinary schools and academies to provide educational programs that instruct in specialty areas of veterinary medicine for veterinary technicians and oversee a certifying examination. TSDR June 30, 2017 Response to Office Action at 59 (Legred Declaration); TSDR February 2, 2018 Response to Office Action at 32-34 (specimen). It appears that the veterinary schools and academies provide the educational component, application oversight, and examination, then certify the graduating veterinary technicians with the degree of "veterinary technician specialist." *Id.* at 32-33.

the 16 certified users does not suffice to show acquired distinctiveness. *Council on Certification of Nurse Anesthetists*, 85 USPQ2d at 1415 (existence of 40,000 certified users reflects commercial success of certifying program but not how the relevant public has come to view the designation). We have no information about the reach of the third-party materials and cannot assume that they have been widely disseminated to consumers. Some materials do not even use the applied-for mark,[38] referring instead, for example, merely to "VTS." Similarly, the two articles provided date from the mid-1990's and we lack information on the circulation of these publications.[39] Moreover, the merely explanatory nature of some of the references to the mark in Applicant's evidence does not persuade us that users of veterinary medicine services who encounter those materials would understand that the veterinary technician providing the services has been certified as having met certain standards rather than as describing that the provider of the services is a veterinary technician who works in a particular specialty. Overall, Applicant's evidence falls short of meeting its burden to show acquired distinctiveness of this highly descriptive proposed certification mark.

**Decision**: The refusal to register the mark on the ground that it is merely descriptive under Trademark Act Section 2(e)(1) and has not acquired distinctiveness under Trademark Act Section 2(f) is affirmed.

---

[38] *E.g.*, TSDR June 30, 2017 Response to Office Action at 104 (Academy of Veterinary Nutrition Technicians), 108 (Academy of Veterinary Surgical Technicians), 119 (Academy of Dermatology Veterinary Technicians).

[39] *Id.* at 125-30.